**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:                                                   Case No. 17-19073-RBR

Sentrix Pharmacy and Discount, LLC          Chapter  11

_____/

***EXPEDITED* KENNETH ZIELINSKI'S (I) MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §503(b)(1)(A) *OR IN THE ALTERNATIVE* (II) MOTION TO ALLOW LATE FILED CLAIM AS TIMELY FILED INCLUDING REQUEST TO ESTIMATE AND ALLOW <u>CLAIM FOR PURPOSES OF VOTING</u>**

> **A hearing is requested on or before <u>July 17, 2018</u>, since the deadline to vote on the Debtor's Plan of Reorganization is July 18, 2018**

Creditor and Interested Party, KENNETH ZIELINSKI ("Zielinski"), through counsel, files this (1) Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)(1)(A) *or in the Alternative* (II) Motion to Allow Late Filed Claim as Timely Filed Including Request to Estimate and Allow Claim for Purposes of Voting, and in support thereof states:

1.      Sentrix Pharmacy and Discount, LLC (the "Debtor" and "Debtor In Possession") filed a Chapter 11 bankruptcy petition on July 19, 2017.

2.      The Proof of Claim deadline for non-government creditors was November 24, 2017.

3.      The Debtor's April 16, 2018 Plan of Reorganization (DE 268) is currently set for confirmation hearing on August 1, 2018 (DE 308).

4.      The deadline to vote on the Debtor's Plan of Reorganization is July 18, 2018.

5.      Zielinski has been employed as a Pharmacist in Charge for the Debtor since February 1, 2016.

6.      Zielinski has no ownership interest in the Debtor.  Zielinski has no interest in the Debtor's accounts receivables, reimbursement claims, or payment disputes.

7.      On May 11, 2018, Administrative Law Judge Robert E. Meale, entered an *Order Overruling the Limited Objection of Petitioner Sentrix, Relinquishing Jurisdiction in all of the Above-Styled Cases as to Petitioner Zielinski with Prejudice, Setting a Deadline for the Carriers and Agengy to File Claims for Attorneys' Fees and Costs Against Any and All Persons Except Petitioner Sentrix, Setting a Contingent Deadline for the Agency to File a Copy of Each Reimbursement Dispute Petition, and Requiring Publix and Wal-Mart to File Copies of Orders* ("**DOAH May 2018 Order**") in the consolidated proceedings pending in State of Florida Division of Administrative Hearings styled *Sentrix Pharmacy and Discount LLC and Kenneth Zielinski v. Department of Financial Services, et al*, Case Nos. 16-7158 through 16-7173, 16-7175, 16-7176, 16-7178 through 16-7183, 16-7199, 16-7200, 16-7233, 16-7238 through 16-7247 ("**DOAH Case**").  A true and correct copy of the DOAH May 2018 Order is attached hereto and incorporated herein as **Exhibit "A."**

8.      The DOAH May 2018 Order required "[a]ny claims of any carrier or the Agency for attorneys' fees and costs against any person, other than petitioner Sentrix, must be filed with DOAH on or before June 11, 2018…" (Paragraph 3, Page 6 of the DOAH May 2018 Order).

9.      On June 8, 2018, in response to the DOAH May 2018 Order, Wal-mart Stores, Inc. and Publix Supermarkets, Inc. filed in the DOAH Case their *Verified Claim for Attorney's Fees, Costs and Pre-Judgment Interest Against Petitioner Kenneth Zielinski and Attorney Andrea Franklin in Accordance with Sections 120.569, 57.105, and 440.32, Florida Statutes* ("**Wal-mart and Publix DOAH Fee Motion**"), which was personally

served on Zielinski on June 13, 2018.  A true and correct copy of the Wal-mart and Publix DOAH Fee Motion is attached hereto and incorporated herein as **Exhibit "B."**[1]

10.    On June 11, 2018, Illinois National Insurance Company also filed in the DOAH Case its *Motion to Assess Attorney's Fees and Costs Against Petitioner Kenneth Zielinski* ("**Illinois DOAH Fee Motion**").  A true and correct copy of the Illinois DOAH Fee Motion is attached hereto and incorporated herein as **Exhibit "C."**[2]

11.    On June 11, 2018, Liberty Insurance Corporation and Employers Insurance Company of Wausau, filed in the DOAH Case it's Statement Regarding Motions for Attorney Fees (**"Liberty DOAH Fee Motion"**) and attaching thereto this Bankruptcy Court's *Order Granting Motion to Approve Settlement Agreement and Global Mutual Releases of All Claims* (DE 306).  A true and correct copy of the Liberty DOAH Fee Motion is attached hereto and incorporated herein as **Exhibit "D."**

12.    On September 5, 2017, Zielinski filed a letter dated August 29, 2017 ("**Zielinski DOAH Letter**"), in the DOAH Case, which is referenced in the DOAH May 2018 Order, explicitly stating that his actions regarding the DOAH Case was strictly at the request of his employer the Debtor and was strictly in the capacity of a representative of the Debtor.  A true and correct copy of the Zelinski DOAH Letter is attached hereto and incorporated herein as **Exhibit "E."**

## A - Request for Administrative Expense Claim

13.    Zielinski is requesting that this Court enter an order (a) allowing him an

---

[1] Respondents Wal-mart and Publix are seeking determination of fees and costs, including pre and post judgment interest, on 480.7 attorney hours.  Assuming $250 per hour, the foregoing claim may easily exceed $120,175.00.

[2] Respondent Illinois National is seeking fees and costs for 229.90 of attorney time.  Again, assuming $250 an hour, the foregoing claim may easily exceed $57,475.00.

administrative expense claim to the extent any fees and or costs are entered against him in the DOAH Case and (b) requiring the Debtor to pay same.  Zielinski does not have the means to defend and or to retain counsel to represent him in the DOAH Case and looks to his master/employer the Debtor to protect its servant/employee Zielinski.   It is important to note that throughout all relevant time periods, Zielinski acted in his capacity as employee of the Debtor.  When Zielinski signed the underlying petitions in the DOAH Case, he did so as a representative of the Debtor and at the request of the Debtor.

14.     Section 503(b)(1)(A) defines administrative expenses as including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." An expense will be accorded administrative status (1) if it arises out of a transaction between the creditor and the debtor-in-possession, and (2) only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.  *In re Main Line Corp.*, 2006 WL 385679, at *4 (Bankr. S.D. Fla. Jan. 30, 2006).

15.     It is well established that a company's duty to indemnify employees is a form of compensation.  See *In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999).  Indemnity is generally defined as the "duty to make good any loss, damage, or liability incurred by another" or "[t]he right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty." *Black's Law Dictionary* 837 (9th ed. 2009).

16.     Section 607.0850, Florida Statutes, is Florida's corporate indemnification statute, setting forth the conditions under which corporate directors, officers, employees,

and agents are entitled to indemnification.   "A corporation shall have power to indemnify any person, who was or is a party to any proceeding by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee, or agent of the corporation or is or was serving at the request of the corporation as a director, officer, employee, or agent of another [entity]...." § 607.0850(2), Fla. Stat.

17.     Zielinski is currently employed by the Debtor and was employed by the Debtor during all times related to the DOAH Case.  The only reason Zielinski is a part of the DOAH Case is because he is an employee of the Debtor.  The Debtor requested that Zielinski sign the underlying petitions in the DOAH Case since Zielinski was employed as the Pharmacist in Charge for the Debtor and apparently met the definition of Healthcare Provider.  Zielinski did not obtain any individual or personal benefit from the DOAH Case and or the underlying claims.  The Debtor has benefited from Zielinski services and continues to benefit from it, including Zielinski assistance in reaching settlements with several of the respondents in the DOAH Case, who are also creditors in the Debtor's bankruptcy case.

18.     Zielinski is requesting that this Court enter an order (a) allowing him an administrative expense claim to the extent any fees and or costs are entered against him in the DOAH Case and (b) requiring the Debtor to pay same.

**B - Request to Allow Late Filed Claim**

19.     In the alternative, Zielinski is requesting that his contingent claim against the Debtor (*See* Proof of Claim No.11; filed on June 30, 2018) be allowed as timely filed and that the Court estimates and allows the claim for purposes of voting.  Furthermore, to the

extent the Debtor contests or is relinquishing its obligations to indemnify its employee Zielinski then Zielinski's claim should be allowed as a rejection claim based on the Debtor's implied agreement to indemnify Zielinski.

20.    Federal Rule Bankruptcy Procedure 3003(c)(3) which establishes the requirements for filing a proof of claim, provides that the "court shall fix and for cause shown may extend the time in which a proofs of claim or interest may be filed." Fed. R. Bankr.P. 3003(c)(3). Rule 9006(b)(1) empowers the court to permit a late file proof of claim, if the movant's failure to comply with the deadline "was the result of excusable neglect." Fed. R. Bankr.P. 9006(b)(1).

21.    The Supreme Court identified the four factors to be considered in making the determination of excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993).

22.    The Debtor is not prejudiced by the allowance of the late filed claim, since the Debtor was always aware of the issues with the DOAH Case.  Furthermore, the Debtor as Zielinski's employer represented and controlled Zielinski as its employee throughout the DOAH Case.  Additionally, the fees and costs claims were just filed in the DOAH Case against Zielinski pursuant to the June 11, 2018 deadline in the DOAH May 2018 Order. Prior to the June 11, 2018 deadline, the Debtor with the assistance of Zielinski have been working to resolve the issues with respondents in the DOAH Case.  Furthermore, the Debtor filed its Plan of Reorganization on April 16, 2018 in an attempt to address all the

claims and issues.  So, it was not until the DOAH fee motions were filed around June 11, 2018, that the contingent claims against Zielinski individually became apparent.

23.     The length of delay and potential impact on judicial proceedings will be minimized if the Court estimates Zielinski's claim in the bankruptcy estate as oppose to waiting on DOAH to enter an order on the underlying fee motions.[3]  Also, the reason for the delay was not in Zielinski's control since it only became apparent that certain respondents were requesting fees and costs against him individually when those respondents filed their fee motions in DOAH around June 11, 2018.  Finally, Zielinski has acted in good faith in requesting this relief.  Zielinski continues to work for the Debtor.  Zielinski assisted the Debtor with and was part of various settlements that this Court has approved.  The reality that Zielinski could be individually liable for his employers actions in the DOAH Case dawned around June 11, 2018.  Prior to June 11, 2018, Zielinski was not considered a creditor in this case and as such has not received any notices from these Bankruptcy Court proceedings.

24.     Also, Zielinski's claim ay be viewed as one for rejection damages as it relates to executory contracts.  The executory contract being the implied agreement between Zielinski and the Debtor to indemnify Zielinski.  All actions taken in the DOAH Case were by the Debtor or at the request of the Debtor.  All legal representations in the DOAH Case were controlled by the Debtor.  The fact that there are now pending fee motions in the DOAH Case against Zielinski pursuant to the DOAH May 2018 Order and the Debtor is not able to defend or protect Zielinski is indicative of the rejection of the

---

[3] It is conceivable that the Judge in the DOAH Case may find that Zielinski has no responsibility for the Respondents fees and costs especially in light of Zielinski's role in the DOAH Case and Zielinski's employee status with the Debtor.

implied agreement to indemnify, which includes defending Zielinski.[4]

Voting Purpose

25.    Zielinski seeks to vote on the Debtor's Plan of Reorganization.  The voting deadline is July 18, 2018.  As such, Zielinski is requesting estimation and the temporary allowance of his claim for purposes of voting especially in the event there is an objection to the allowance of Zielinski's claim.

26.    The temporary allowance of a claim for voting purposes is committed to this Court's reasonable discretion based on Fed.R.Bankr.P. 3018(a), which provides in relevant part that:

> ... notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

27.    Section 502(c)(1) of the Bankruptcy Code provides that there shall be estimated for purpose of allowance "... any contingent or unliquidated claim, the fixing or liquidation of which would unduly delay the administration of the estate." Neither Rule 3018(a) nor § 502(c)(1) provide any method of estimating claims. However, Bankruptcy Judges should use whatever method is best suited to the particular case contingencies involved.  *In re Hydrox Chem. Co.*, 194 B.R. 617, 623 (Bankr. N.D. Ill. 1996)

28.    Zielinski is requesting estimation and the temporary allowance of his claim (*See* Proof of Claim No. 11; filed on June 30, 2018) for purposes of voting especially in the event there is an objection to the allowance of Zielinski's claim.  Also, to facilitate voting, Zielinski will need the Debtor to timely provide him with a ballot.

---

[4] Admittedly, this implied agreement to indemnify was not explicitly reflected in the Debtor's filings with the Bankruptcy Court.  However, the Debtor's actions, especially in an attempt to extend the automatic stay to the DOAH Case, would seem to indicate the Debtor's understanding that it had an obligation to protect its employees, which included Zielinski.

29.     In an abundance of caution, Zielinski will be filing a limited objection to the Plan of Reorganization to ensure among other things that his status as employee and agent of the Debtor is clearly stated, especially as it relates to claims in the DOAH Case.

WHEREFORE, Creditor and Interested Party, KENNETH ZIELINSKI respectfully requests an Order granting this (1) Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)(1)(A) *or in the Alternative* (II) Motion to Allow Late Filed Claim as Timely Filed Including Request to Estimate and Allow Claim for Purposes of Voting, and for such other and further relief as is equitable and just.

**KIEM LAW, PLLC**
Attorney for Creditor Kenneth John Zielinski
8461 Lake Worth Road, Suite 114
Lake Worth, Florida 33467
Telephone: 561-600-0406
Facsimile:  561-763-7355
Email: tarek@kiemlaw.com

By:   /s/ Tarek K. Kiem
            Tarek K. Kiem
            Florida Bar No 0637041

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished to all parties as reflected below on June 30, 2018:

Via CM/ECF Notice of Electronic Filing:

Edward U Ibeh on behalf of Interested Party Associated Industries Insurance
ibehedward@yahoo.com

Edward U Ibeh on behalf of Interested Party Technology Insurance Company, Inc.
ibehedward@yahoo.com

Camille J Iurillo on behalf of Interested Party Bridgefield Employers Insurance Company
ciurillo@iurillolaw.com, nhawk@iurillolaw.com;gpellegrino@iurillolaw.com

Camille J Iurillo on behalf of Interested Party Employers Insurance Company of Wausau

ciurillo@iurillolaw.com, nhawk@iurillolaw.com;gpellegrino@iurillolaw.com

Camille J Iurillo on behalf of Interested Party Liberty Insurance Corporation
ciurillo@iurillolaw.com, nhawk@iurillolaw.com;gpellegrino@iurillolaw.com

Camille J Iurillo on behalf of Interested Party XL Insurance America, Inc.
ciurillo@iurillolaw.com, nhawk@iurillolaw.com;gpellegrino@iurillolaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jordan L Rappaport, Esq on behalf of Debtor Sentrix Pharmacy and Discount, LLC
office@rorlawfirm.com, 1678370420@filings.docketbird.com

Kenneth S Rappaport, Esq on behalf of Debtor Sentrix Pharmacy and Discount, LLC
office@rorlawfirm.com, 2656204420@filings.docketbird.com

Damaris D Rosich-Schwartz on behalf of U.S. Trustee Office of the US Trustee
Damaris.D.Rosich-Schwartz@usdoj.gov

Scott R Schomber on behalf of Creditor Publix Super Markets, Inc.
sschomber@mcconnaughhay.com, anelson@mcconnaughhay.com

Scott R Schomber on behalf of Creditor Walmart Stores Inc
sschomber@mcconnaughhay.com, anelson@mcconnaughhay.com

Via First Class Prepaid U.S. Mail:

Victor Delle Fave
Delle Dave, Taracsco & Co
1111 Route 110 Suite 220
East Farmingdale, NY 11735

Jason S Mazer
100 SE 2 St, 30 FL
Miami, FL 33131

                                           By:     /s/ Tarek K. Kiem      
                                           Tarek K. Kiem
                                           Florida Bar No 0637041

Dated: June 30, 2018

EXHIBIT "A"


STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS


SENTRIX PHARMACY AND DISCOUNT,
LLC, AND KENNETH ZIELINSKI,

    Petitioners,

vs.                                     Case Nos. 16-7158 through
                                        16-7173, 16-7175, 16-7176,
DEPARTMENT OF FINANCIAL                 16-7178 through 16-7183,
SERVICES, DIVISION OF WORKERS'          16-7199, 16-7200, 16-7233
COMPENSATION; WAL-MART STORES,          16-7238 through 16-7247
INC.; SEDGWICK CMS; BRIDGEFIELD
EMPLOYERS INSURANCE COMPANY;
PUBLIX SUPER MARKETS, INC.;
LIBERTY INSURANCE COMPANY;
EMPLOYERS INSURANCE COMPANY OF
WAUSAU; FLORIDA CITRUS BUSINESS
& INDUSTRIES; ASSOCIATED
INDUSTRIES INSURANCE COMPANY,
INC.; BROADSPIRE SERVICES;
NEW HAMPSHIRE INSURANCE COMPANY,
INC.; ILLINOIS NATIONAL
INSURANCE COMPANY; and XL
INSURANCE AMERICA, INC.,

    Respondents.

_____/


ORDER OVERRULING THE LIMITED OBJECTION OF PETITIONER SENTRIX,
RELINQUISHING JURISDICTION IN ALL OF THE ABOVE-STYLED CASES AS
TO PETITIONER ZIELINSKI WITH PREJUDICE, SETTING A DEADLINE FOR
THE CARRIERS AND AGENCY TO FILE CLAIMS FOR ATTORNEYS' FEES AND
COSTS AGAINST ANY AND ALL PERSONS EXCEPT PETITIONER SENTRIX,
SETTING A CONTINGENT DEADLINE FOR THE AGENCY TO FILE A COPY OF
EACH REIMBURSEMENT DISPUTE PETITION, AND REQUIRING PUBLIX AND
WAL-MART TO FILE COPIES OF ORDERS

    Each of these consolidated cases is a dispute involving
reimbursement from a workers' compensation carrier for medical
treatment, including medicine, provided to an injured employee.
(All references to "carrier" include a self-insured employer or
third-party administrator.)  Pursuant to section 440.13(1)(g)
and (q) and (6), Florida Statutes, a "health care provider" that

has provided medical treatment to an injured employee submits a
claim for reimbursement to the carrier, which determines whether
the claim is properly payable in whole or in part.  If the
carrier disallows or adjusts a claim for reimbursement,
section 440.13(7) authorizes the "health care provider" to
dispute the carrier's decision by filing a petition with the
Department of Financial Services (Agency) requesting the Agency
to resolve the dispute (Reimbursement Dispute Petition).  In
each of these cases, the Agency resolved the dispute in favor of
the carrier; in some capacity, petitioner Sentrix filed a
petition for a formal administrative hearing (Administrative
Hearing Petition), and the Agency transmitted the Administrative
Hearing Petition to the Division of Administrative Hearings
(DOAH).

     In December 2016, the Agency transmitted the Administrative
Hearing Petitions in 45 cases to DOAH.  Relatively early in the
history of these cases, presumably for reasons pertaining to
each case rather than for reasons pertaining to the entire batch
of cases, one or both petitioners requested the dismissal of
eight of the 45 cases, leaving a total of 37 cases.  No carrier
objected to any of the requests, and the Administrative Law
Judge relinquished jurisdiction to the Agency in Case
Nos. 16-7341, 16-7174, 16-7201, 16-7232, and 16-7234 through
16-7237.

     As mentioned above, a "health care provider" is authorized
to seek reimbursement, and, if the carrier disallows or adjusts
the reimbursement claim, the "health care provider" is
authorized to request an administrative hearing.  Under
section 465.015, a pharmacist, but not a pharmacy, may fill or
dispense a prescription in Florida.  Lacking a copy of any of
the underlying Reimbursement Dispute Petitions and unsure of the
role of petitioner Sentrix in filing the Administrative Hearing
Petitions, the Administrative Law Judge issued an Order to
Show Cause on March 7, 2017, directing the parties to file
objections, if any, to the addition of petitioner Zielinski as a
party.  Absent timely filed objections, by Order entered
March 15, 2017, the Administrative Law Judge added petitioner
Zielinski as a party.

     Three or four dozen cases involving similar, but not
identical facts, present widely recognized challenges in
pleading, discovery, and case management, but an unusual feature
of the above-styled cases is that they represent a small
fraction of a much larger number of cases--as of June 2017,
nearly 600--that reportedly involve one or both petitioners and

2

many of the same carriers.  The Agency evidently elected not to
transmit to DOAH the requests for hearing in these cases until
the first batch of cases had been resolved.  The prospect of
hundreds of additional cases to be litigated complicated
attempts to dispose of the remaining 37 cases due to the
parties' investment of time and money in refining pleadings,
conducting discovery, and otherwise preparing for final hearing,
which, after three continuances, was finally set for August and
September 2017.

     After various carriers filed motions for summary
disposition, including requests for attorneys' fees and costs,
on June 22, 2017, petitioner Sentrix filed a Motion to Withdraw
Certain Requests for Hearing.  On June 23, 2017, petitioners
Sentrix and Zielinski filed an Amended Motion by Interlineation
to Withdraw Certain Requests for Hearing.  Unfortunately, the
Administrative Law Judge had already begun working on the
June 22 motion, failed to notice the Amended Motion by
Interlineation to Withdraw Certain Requests for Hearing, and, on
June 27, issued an order on the June 22 motion and, on June 28,
issued a corrective order, again on the June 22 motion.  The
orders essentially denied the motion to withdraw, subject to,
among other things, a refiling by both petitioners; in form, the
orders deemed the June 22 motion withdrawn if both petitioners
did not file an amended motion by a date certain.  When they
failed to do so, the June 22 motion was deemed withdrawn.

     The Administrative Law Judge never ruled on the June 23
motion.  The motion, like its predecessor, lists the cases for
which the requests for administrative hearing are to be
withdrawn.  The motion states that, if these cases are
dismissed, the only cases remaining to be heard would be Case
Nos. 16-7170 and 16-7173.  In fact, nine other cases are omitted
from the June 22 and 23 motions to withdraw requests for
hearing:  Case Nos. 16-7172, 16-7178 through 16-7183,
16-7238, and 16-7239.  These 11 remaining cases shall be
referred to as the Remaining 11 Cases.

     Various carriers filed objections to petitioners' requests
to withdraw the Administrative Hearing Petitions.  Many of the
objections reiterated the carriers' intent to recover attorneys'
fees and costs.  On July 19, 2017, petitioner Sentrix filed a
petition in bankruptcy and a Suggestion of Bankruptcy in
the 37 above-styled cases.

     On July 31, 2017, the Administrative Law Judge issued an
Order to Show Cause asking the parties to respond to various

3

options for moving the cases.  On August 15, 2017, the
Administrative Law Judge conducted a telephone conference to
discuss the responses.  On August 21, 2017, the Administrative
Law Judge issued an order on the prehearing conference canceling
the first week of the final hearing, which was due to start one
week later, to allow the bankruptcy judge an opportunity to
issue a ruling on pending motions that might allow the above-
styled cases to proceed to final hearing.  On August 28, 2017,
the Administrative Law Judge conducted another telephone
conference and, by order issued on the same day, canceled the
second week of the final hearing, which was due to start about
four weeks later, and granted leave to withdraw to counsel for
petitioner Zielinski.  The order explains that, if Mr. Zielinski
retains new counsel, he or she would need more time to examine
the voluminous files.  The order states that the parties
informed the Administrative Law Judge that the bankruptcy judge
had issued an order declining to extend the bankruptcy stay to
petitioner Zielinski, but no one had filed a copy of the
bankruptcy judge's order.

     The August 28 order notes that the petitioners had not
requested leave to dismiss the Remaining 11 Cases, evidently on
the belief that no carrier had appeared as a respondent or
intervenor in any of them.  The August 28 order observes that
DOAH had omitted from the style of the consolidated cases one
carrier, XL Insurance America, Inc., which had appeared in Case
No. 16-7172.  Notwithstanding this minor point of confusion, it
appears that the petitioners intended to dismiss all but 11
cases, not all but two cases, as set forth in the amended
interlineated motion.  A corrected order entered on August 30
did not materially change the August 28 order, which recites
selected portions of the protracted procedural history of these
cases for the benefit of any new attorney whom petitioner
Zielinski might retain.

     On August 31, the parties filed the bankruptcy judge's
order that they had referenced during the August 28 conference
call.  On September 5, petitioner Zielinski filed a letter to
the Administrative Law Judge noting that he is a pharmacist
employed by petitioner Sentrix and had been asked by his
supervisor to sign "Worker's compensation petition forms"--
likely meaning Reimbursement Dispute Petitions.  Petitioner
Zielinski advised that he signed the forms merely as an employee
of petitioner Sentrix and did not intend "to pursue any
reimbursement for myself as an individual."  Combined with the
facts that no new attorney has ever made an appearance on behalf
of petitioner Zielinski and he has never filed anything else in

4

these cases, the last-quoted statement means that petitioner
Zielinski did not intend to prosecute these reimbursement claims
in any capacity.

On November 20, two carriers, Publix and Wal-mart, filed a
motion to schedule the final hearing or dismiss the cases,
addressing the bankruptcy stay on the basis that petitioner
Zielinski, not petitioner Sentrix, is the necessary party.  The
Administrative Law Judge concluded that motion did not
adequately address the bankruptcy stay and declined to rule on
the motion.  However, on February 16, 2018, the Administrative
Law Judge issued an Order to Show Cause to both petitioners
directing them to file a status report describing the status of
the bankruptcy proceeding and "explaining why the Administrative
Law Judge may not relinquish jurisdiction" to the Agency,
subject to the disposition of any claims for attorneys' fees and
costs.  Petitioner Zielinski filed no response.  On March 2,
bankruptcy counsel for petitioner Sentrix filed a response
stating that it is virtually impossible for the present cases to
proceed at DOAH without encroaching upon the jurisdiction of the
bankruptcy court.  By response filed March 6, 2018, Publix and
Wal-mart stated that they had a hearing scheduled with the
bankruptcy court on March 27, essentially on a motion for
clarification as to the ability of the present cases to proceed.
The response states that petitioner Zielinski signed all
Reimbursement Dispute Petitions and Administrative Hearing
Petitions.  It may be true that petitioner Zielinski signed all
of the Reimbursement Dispute Petitions, but he did not sign all
of the Administrative Hearing Petitions unless one concludes
that petitioner Sentrix signed and filed these petitions as an
agent of petitioner Zielinski.  On March 20, Publix and Wal-mart
filed an amended response, to which they attached a motion filed
in the bankruptcy court arguing an alternative to the first-
stated option of allowing the administrative cases involving
petitioner Zielinski to proceed.

On April 25, Publix and Wal-mart filed a Notice of Filing
and Request to Take Judicial Notice concerning the bankruptcy
judge's order dated April 19, 2018, which states in part:
"Robert E. Meale, Administrative Law Judge, is specifically
advised that the automatic stay . . . does not apply to
[petitioner] Zielinski."  Again, no one has filed a copy of this
order.  On the same date, Publix and Wal-mart refiled their
motion to schedule the final hearing as to petitioner Zielinski
or dismiss the Administrative Hearing Petitions, reserving
jurisdiction to assess attorneys' fees and costs.  On May 3,
bankruptcy counsel for petitioner Sentrix filed a Limited

Objection to the April 25 motion of Publix and Wal-mart,
contending that the above-styled cases may not proceed under
either alternative suggested by Publix and Wal-mart without
encroaching upon the rights of petitioner Sentrix--a contention
that was at least implicitly rejected in the bankruptcy judge's
April 19 order.  The Administrative Law Judge infers from the
absence of argument in petitioner Sentrix's limited objection
that the April 19 order is correctly cited by in the motion of
Publix and Wal-mart.

Based on the foregoing, it is

ORDERED that:

1.  The limited objection of petitioner Sentrix filed on
May 3, 2018, is overruled.  Twice, the bankruptcy court has
ruled that the bankruptcy stay does not apply to petitioner
Zielinski.  In the April 19 order, which is directed
individually to the undersigned Administrative Law Judge, the
bankruptcy judge implicitly rejects the contention of petitioner
Sentrix set forth in its limited objection.

2.  Petitioner Zielinski asked for the dismissal of all but
the Remaining 11 Cases in his Amended Motion by Interlineation
to Withdraw Certain Requests for Hearing that was filed on
June 23, 2017, and remains outstanding.  The September 5, 2017,
letter and the failure to respond to the Order to Show Cause of
February 16, 2018, reveal petitioner Zielinski's intent also not
to prosecute the Remaining 11 Cases.  Therefore, as to
petitioner Zielinski, DOAH relinquishes jurisdiction to the
Agency, subject to the provisions of paragraph 3 below.  This
order is with prejudice because petitioner Zielinski has
withdrawn his Administrative Hearing Petition in each of the
above-styled cases and, by so doing, has forfeited his right to
an administrative hearing on the issues raises by these
petitions, as amended.

3.  Any claims of any carrier or the Agency for attorneys'
fees and costs against any person, other than petitioner
Sentrix, must be filed with DOAH on or before June 11, 2018, or
by such other deadline that may be established by statute, rule,
or court case, which shall govern over the June 11 deadline.
Each claim must contain a plain statement of the relevant facts
and identify each provision of law on which liability is based.
Do not incorporate by reference prior pleadings, but reference
all filings, by date and title, that contain a claim for
attorneys' fees and costs.  If a claim is asserted against a

6

party not presently on the certificate of service, serve the
party and show the service in the certificate.

4.  If any such claims are timely filed, the Agency shall
file, within 30 days of the filing of the first such claim,
copies of each signed Reimbursement Dispute Petition for each of
the above-styled cases, plus the eight above-described cases
that have been closed.  The Agency shall mark each copy with the
DOAH Case Number to which it pertains.

5.  On or before May 21, 2018, Publix and Wal-mart shall
file the bankruptcy court's April 19, 2018, order in the above-
styled consolidated cases and shall file this order in the
above-styled consolidated cases with the bankruptcy court.

DONE AND ORDERED this 11th day of May, 2018, in
Tallahassee, Leon County, Florida.

ROBERT E. MEALE
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 11th day of May, 2018.

COPIES FURNISHED:

David Davis Hershel, Esquire
Department of Financial Services
200 East Gaines Street
Tallahassee, Florida  32399
(eServed)

7

Thomas Nemecek, Esquire
Department Financial Services
Division of Workers' Compensation
200 East Gaines Street
Tallahassee, Florida  32399
(eServed)

Tara L. Said, Esquire
Eraclides, Gelman, Hall, Indek,
  Goodman, Waters, & Traverso
801 West Romana Street, Suite D
Pensacola, Florida  32502
(eServed)

Kimberly J. Fernandes, Esquire
Kelley, Kronenberg, Gilmartin, P.A.
201 South Monroe Street, Suite 5
Tallahassee, Florida  32301
(eServed)

Nicole Florentino, Esquire
Eraclides, Gelman, Hall, Indek,
  Goodman, Waters, & Traverso
1661 Sandspur Road
Maitland, Florida  32751
(eServed)

James N. McConnaughhay, Esquire
McConnaughhay, Duffy, Coonrod, Pope,
  Weaver, Stern, & Thomas, P.A.
1709 Hermitage Boulevard, Suite 200
Tallahassee, Florida  32308
(eServed)

James T. Armstrong, Esquire
Walton Lantaff Schroeder & Carson LLP
249 Maitland Avenue, Suite 2000
Altamonte Springs, Florida  32701
(eServed)

Kip O. Lassner, Esquire
Cole, Scott, & Kissane, P.A.
600 North Pine Island Road, Suite 500
Plantation, Florida  33324
(eServed)

Matthew J. Lavisky, Esquire
Butler, Weihmuller, Katz, & Craig, LLP
400 North Ashley Drive
Tampa, Florida  33602
(eServed)

Tabitha G. Harnage, Esquire
Department of Financial Services
200 East Gaines Street
Tallahassee, Florida  32399
(eServed)

Tim Jesaitis, Esquire
The Law Office of Tim Jesaitis, P.A.
Post Office Box 388
St. Petersburg, Florida  33731-0388
(eServed)

Brian C. Dowling, Esquire
The Workers' Compensation Group, P.A.
100 Terra Mango Loop, Suite A
Orlando, Florida  32835
(eServed)

Jordan L. Rappaport, Esquire
Rappaport Osborne & Rappaport, PLLC
1300 North Federal Highway, Suite 203
Boca Raton, Florida  33432
(eServed)

Camille J. Iurillo, Esquire
Iurillo Law Group, P.A.
5628 Central Avenue
St. Petersburg, Florida  33707
(eServed)

Kenneth Zielinski
Sentrix Pharmacy and Discount, LLC
15688 80th Drive North
Palm Beach Gardens, Florida  33418

Sentrix Pharmacy and Discount, LLC
15688 80th Drive North
Palm Beach Gardens, Florida  33418

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

SENTRIX PHARMACY AND DISCOUNT, LLC
And KENNETH ZIELINSKI,

      Petitioners,                   **Filed under Case No.: 16-7158**

vs.                   Case Nos.    16-7158 through 16-7176,
                                  16-7178 through 16-7183
                                  16-7199 through 16-7201
DEPARTMENT OF FINANCIAL        16-7233,
SERVICES, DIVISION OF WORKERS' COMPENSATION   16-7235 through 16-7247,
and                                  16-7341

        Respondent,

and

**WAL-MART STORES, INC., AND SEDGWICK CMS,**
**Intervenors (Case Nos. 16-7245 through 16-7247**

And

BRIDGEFIELD EMPLOYERS INS. CO.,
Intervenor (Case No. 16-7233)

and

RETAIL FIRST INS. CO.
Intervenor (Case No. 16-7235)

and

**PUBLIX SUPER MARKETS, INC.,**
**Intervenor (Case Nos. 16-7158 through 16-7176 and**
**16-7178 through 16-7183)**

and

LIBERTY INSURANCE COMPANY,
Intervenor (Case Nos. 16-7199 through 16-7201)

1

and

EMPLOYERS INS. CO. OF WAUSAU,
Intervenor (Case No. 16-7175)

and

ASSOCIATED INDUSTRIES INS. CO., INC.
Intervenor (Case No.: 16-7171)

BROADSPIRE SERVICES, NEW HAMPSHIRE INS. CO., INC.
Intervenor (Case Nos. 16-7240 through 16-7242)

and

FLORIDA CITRUS, BUSINESS & INDUSTRIES FUND,
Intervenor (Case No. 16-7176)
_____/

## VERIFIED CLAIM FOR ATTORNEY'S FEES, COSTS AND PRE-JUDGMENT INTEREST AGAINST PETITIONER KENNETH ZIELINSKI AND ATTORNEY ANDREA M. FRANKLIN IN ACCORDANCE WITH SECTIONS 120.569, 57.105, AND 440.32, FLORIDA STATUTES

Pursuant to the Order from the court dated May 11, 2018, the following claim is made by Respondents Wal-mart Stores, Inc. and Publix Supermarkets, Inc. (hereinafter Respondents) for the payment of attorney fees, costs and pre-judgment interest assessable against the Petitioner Kenneth Zielinski as the Petitioner in these proceedings and as the "medical care provider" as defined by Section 440.13(3), Florida Statutes (hereinafter Petitioner, client, or losing party), and Andrea M. Franklin as attorney for Petitioner (hereinafter Petitioner's attorney, losing party's attorney or attorney for client). **Specifically no attorney fees are being sought against Sentrix Pharmacy and Discount LLC (hereinafter Sentrix) that is the subject of pending bankruptcy proceedings.**

2

## Preliminary Statement

These Respondents are two of the original Respondents to these proceedings as noted in the case heading. Several of the Respondents have apparently settled various claims with Sentrix in bankruptcy court in whatever capacity Sentrix represents in these proceedings.

All petitions or claims made for the payment of the compound drugs in question (and for that matter, the 600+ claims pending that have not been referred to DOAH for a hearing) have been made based upon an alleged "implied" authorization to dispense in accordance with the provisions of Section 440.13(3)(d), F.S. Even assuming that this statutory provision is relevant in establishing entitlement to payment of the drugs (which is not admitted), this provision only applies to a "health care provider" who in this case is Kenneth Zielinski, the pharmacist. For this reason, claim for attorney fees and costs are made against Petitioner Zielinski and his attorney Andrea M. Franklin. Claim for attorney fees, costs and pre-judgment interest is are being asserted pursuant to the statutory provisions as herein stated against the attorney that signed the original petition, Andrea M. Franklin as the losing party's attorney H.J.J., Inc. v. Party Production, 738 So. 2d 515 (Fla. 3d DCA 1999). Additional attorney fees from subsequent attorneys representing Petitioner may be asserted as discovery continues in regards to this claim. It should be noted that attorney Franklin was the attorney Petitioner from inception until order of the court dated September 26, 2017.

## Procedural History and Relevant Facts

In these proceedings, Sentrix and Petitioner made claims for reimbursement of the compound drugs in question alleging an "implied" authorization to Petitioners by Respondents to dispense the medication to injured workers' compensation claimants pursuant to the terms of Section 440.13(3)(d), F.S. It was alleged by Petitioner that this statutory provision provides for

3

an implied authorization to dispense the medication in question.  Assuming that this argument of an implied authorization to dispense has any validity in regards to the issues in this case, which is denied by Respondents, the implied authorization to dispense only applies to "health care providers."  A health care provider is defined as a physician (which the Petitioner is not) or a practitioner "licensed to provide skilled services."    See §440.13(1)(g), Florida Statutes (with exceptions not relevant to these proceedings).  Under §465.015, Florida Statutes, the pharmacist and not the pharmacy may fill or dispense drugs.  See Order of February 15, 2017. (The ALJ specifically found in his order of February 15, 2017 that only the pharmacist and not the pharmacy was the health care provider. This had also been determined in the ALJ's order of January 10, 2017.)  As discussed hereinafter, it was for this reason that Zielinski, the pharmacist, was added as a Petitioner based upon his own motion as hereinafter discussed.

Throughout this litigation, the only "potential" basis for which Respondents would be liable for the payment of the compound medication (other attempts at establishing liability were deemed of no consequence by the ALJ as hereinafter discussed) was that Respondents had impliedly authorized the dispensing of the medication in accordance with Section 440.13(3)(d), Florida Statutes. Petitioners argued that in reviewing this statutory provision and in particular the second sentence, there was no need to obtain specific Respondent authorization to dispense. It was argued that if Respondents fail to respond to a request to dispense by Petitioner, they have "impliedly" agreed that the medication could be dispensed and accordingly Respondents would be responsible for payment.  The ALJ in his order dated February 15, 2017 rejected this argument and determined that "Petitioner's construction (of Section 440.13(3)(d), F.S.) makes no sense."  The ALJ further characterized Petitioner's arguments as "illogical and unsupported by the clear language of these (statutory) provisions." Finally, the ALJ determined that Petitioner's

4

interpretation "produces a conflict with the requirements of section 440.13(3)(a) that a health care provider is not able to obtain reimbursement from a carrier unless the provider obtains authorization prior to providing treatment." The ALJ further determined that "Petitioner has had ample opportunity to discover the facts and law that may support a claim that it was authorized when it dispensed the subject prescription medicine, so the Administrative Law Judge will allow only a single opportunity for amendment on this issue." Absent an amendment to the Petition for Reimbursement, the ALJ ruled that the Petitions for Reimbursement would be dismissed.

Petitioner was given an extension of time to "state one or more bases of authorization that did not rely on Petitioner's misreading of the sentence of Section 440.13(3)(d), Florida Statutes, as set forth in the February 15, 2017 order." (See Order dated February 21, 2017.)

Based on the ALJ's ruling that the medical care provider was the pharmacist, the attorney representing Sentrix amended her Petition for Reimbursement to name Zielinski as a Petitioner and requested a continuance of the final hearing. Based upon the motion to add Zielinski, the court inquired as to whether any party in the proceedings had any objection. On March 8, 2017, these petitioners responded:

> "These respondents have no objection to naming Mr. Zielinski as a
> named petitioner individually, it being understood that any and all
> determinations made by the court in this matter shall be personally
> binding on Mr. Zielinski, including but not limited to any and all
> licensing issues and potential findings in accordance with Sections
> 440.13(7)(8) and (11); Section 440.106; and Sections
> 440.105(4)(b)(c), Florida Statutes."

See Response to Order to Show Cause filed by Respondents Walmart and Publix (March 8, 2017).

Although being advised of possibly being personally liable as a named petitioner, Zielinski assumed the role of a Petitioner and was represented by the same attorney that

represented Sentrix, which potentially could be a conflict. Regardless, an Amended Petition for Hearing was filed in the name of Sentrix and Zielinski as Petitioners on March 6, 2017. (See Order of ALJ dated March 20, 2017.)

The amended petition filed by Zielinski and Sentrix was a re-statement of the issues that were previously argued and rejected by the ALJ and included totally irrelevant allegations as determined by the ALJ. The ALJ ruled that the amended petition failed to clearly state a theory for recovery creating an impossible situation for the ALJ to make a ruling. Again, the ALJ found that the Petitioner was clearly misreading the statute. Again, the ALJ gave the Petitioners the "opportunity to rethink their theory of the case and, if possible lay out in an amended pleading the facts and law that would produce the relief that they seek." For a second time, the ALJ ruled that "section 440.13(3)(d) thus has no role whatsoever in the amended request for hearing." A great deal of the Amended Petition was stricken as being irrelevant. Notwithstanding the fact that he had previously ruled that only one amendment would be allowed, the ALJ allowed Petitioners to file a Second Amended Request for Hearing if filed by the close of business on April 10, 2017. See Order dated March 20, 2017.

On March 21, 2017, Petitioners filed a Motion to Set Aside and/or Vacate Order Granting Motions to Dismiss the Amended Requests for Hearing with Leave to Amend. The ALJ found that "if Petitioner shows that it has stated a claim on which relief may be granted based on pleadings consistent with the principles set forth in the order of March 20, 2017, the Administrative Law Judge will set aside the order and the hearing will proceed . . . ." This is the third time the ALJ made the same ruling.

The ALJ on March 23, 2017 entered an Order Denying a Request for Rehearing (now the fourth time that such a ruling was made).

A Second Amended Request for Hearing was filed by Petitioner. These Respondents again moved to strike the claim and various positions being taken by Petitioner. Paragraph by paragraph in the Second Amended Request for Hearing, these Respondents in their Response to the Second Amended Request for Hearing dated April 28, 2017 responded to the various allegations made in the Amended Request for Hearing and filed their Motion for Final Summary Order in accordance with Section 120.57(1)(i), F.S. A Motion for Extension of Time to respond to the Motion for Final Summary Order was filed by Petitioners and granted by the ALJ in an order of May 2, 2017. Petitioners objected to the Motion for Final Summary Order which was denied in an order by the ALJ on May 2, 2017. Another motion for extension of time was filed on May 25, 2017 which was granted by Order dated May 26, 2017. As requested by Petitioners, the ALJ scheduled a pre-hearing conference on June 6, 2017.

Future actions taken by Petitioners would suggest that there was never any intent to go to a hearing in these cases. All during this time period, Petitioners sought to limit discovery as hereinafter explained, both from a procedural standpoint in attempting to limit issues to be ruled upon by the ALJ and by objecting to virtually every attempt by these Respondents and other Respondents to obtain information in defense of the claims for payments for the compound drugs.

Finally, on June 22, 2017, Petitioner Sentrix withdrew its requests for hearings against these Respondents (assuming it had a claim in the first instance). Petitioner Zielinski did not withdraw his requests for hearing. Both Zielinski and Sentrix were represented by the same attorney so it is assumed that Zielinski intended not to withdraw his petitions for reimbursements and requests for hearing. See Corrected Order dated June 28, 2017. Sentrix sought to delay discovery which was denied by the ALJ. It was not until September 15, 2017 that Petitioner

Zielinski, apparently unrepresented, filed a letter with the ALJ indicating that he did not want to file a claim and had signed petition forms only as requested by his supervisor. The ALJ interpreted Zielinski's letter to mean that Zielinski did not intend to prosecute the reimbursement claims.

While Petitioner (Zielinski) retained his claims for the payment of the dispensed drugs, Sentrix on July 9, 2017 filed a suggestion of bankruptcy with the ALJ. Even though the bankruptcy related to Sentrix and not Zielinski, Sentrix asserted that the bankruptcy automatic stay provisions also applied to these proceedings involving Zielinski, another attempt to delay or minimize discovery. The request for stay of these proceedings was filed shortly before the taking of scheduled depositions expected to support the defenses to the claims asserted by Respondents, i.e., witnesses Claudia Kemp, Dr. Maria Kendall and a witness set by another Respondent.

On two occasions in bankruptcy court, Sentrix attempted to extend the Sentrix bankruptcy stay to these proceedings. Both attempts at extending the stay were rejected by the bankruptcy judge. The orders of the bankruptcy judge were unclear as to the exact findings being made since the only ruling was that the motion to extend stay and the motion for rehearing were "denied." Understandedly, the ALJ was unclear on whether he had jurisdiction to proceed in this case. These Respondents filed a motion as an "interested party" seeking clarification of the bankruptcy court's decision understanding the ALJ's difficulty in determining if he had jurisdiction to decide the issues in this case. Sentrix objected to this effort. A specific Motion for Clarification was subsequently filed by Respondents and the bankruptcy court specifically stated that the denial of the stay specifically related to these proceedings, a fact well known to Sentrix and his legal counsel since they filed the motion to stay these proceedings and participated in the hearings for stay which were denied. It was only after the bankruptcy judge

8

specifically ruled based on the motion to clarify filed by these Respondents that the denial of stay related to these proceedings. It was at that time that the ALJ assumed jurisdiction. Even then, Sentrix filed a Motion to Stay these proceedings with the ALJ which was denied by the ALJ in view of the bankruptcy court's findings denying the Sentrix stay extensions. See Order of ALJ dated May 11, 2018.

## Statutory Basis for Claims for Attorney's Fees and Costs

The following statutory provisions related to the payment of attorney's fees and costs are considered by these parties as applicable:

1) Section 120.569(2)(e), Florida Statutes, which states as follows:

> (e) All pleadings, motions or other papers filed in the proceeding must signed by the party, the party's attorney, or the party's qualified representative. The signature constitutes a certificate that the person has read the pleading, motion, or other paper and that, based upon reasonable inquiry, it is not interposed for any improper purposes, such as to harass or to cause unnecessary delay, or for frivolous purpose or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of these requirements, the presiding officer shall impose upon the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. (Emphasis added.)

2) Section 57.105(1)(a), (2)(5), Florida Statutes, which states as follows:

> (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (emphasis added)
>
> > (a) Was not supported by the material facts necessary to establish the claim or defense;
>
> (2) At any time in any civil proceeding or action in which the moving party proves by a preponderance of the evidence that any action taken by the opposing party,

9

including, but not limited to, the filing of any pleading or part thereof, the assertion of or response to any discovery demand, the assertion of any claim or defense, or the response to any request by any other party, was taken primarily for the purpose of unreasonable delay, the court shall award damages to the moving party for its reasonable expenses incurred in obtaining the order, which may include attorney's fees and other loss resulting from the improper delay.

(5) In administrative proceedings under chapter 120, an administrative law judge shall award a reasonable attorney's fee and damages to be paid to the prevailing party in equal amounts <u>by the losing party</u> and a losing party's attorney or qualified representative in the same manner and upon the same basis as provided in subsections (1)-(4). <u>A voluntary dismissal by a nonprevailing party does not divest the administrative law judge of jurisdiction to make the award described in this subsection.</u> (Emphasis added.)

3) Section 440.32(1)(2)(3), Florida Statutes, which states as follows:

(1) If the judge of compensation claims or any court having jurisdiction of proceedings in respect of any claim or compensation order determines that the proceedings in respect of such claim or order have been instituted or continued without reasonable ground, the cost of such proceedings shall be assessed against the party who as so instituted or continued the proceedings.

(2) If the judge of compensation claims or any court having jurisdiction of proceedings in respect to any claims or defense under this section determines that the proceedings were maintained or continued frivolously, the cost of the proceedings, including reasonable attorney's fees, shall be assessed against the offending attorney.

(3) Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. The signature of an attorney constitutes a certificate by the signer that the signer has read the pleadings, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this section, the judge of compensation claims or any court having jurisdiction of proceedings, upon motion or upon its own initiative, shall impose upon <u>the person who signed</u> it an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the

10

pleading, motion, or other paper, including a reasonable attorney's fee. (Emphasis added.)

4) Section 1.380, Fla. Rules of Civil Procedure made applicable to these proceedings in accordance with Rule 28-106.206 FAC.

## Claims Made for the Assessment of Attorney Fees and Costs

From the outset of this case, as reflected in the initial response filed by these Respondents to the Request for Hearing, fraud was asserted as a defense and the basis of the claim for attorney fees and costs. On January 23, 2017, these Respondents listed various fraudulent activities, reserving the right to add additional issues as discovery developed. These Respondents specifically adopted the defenses/claims as asserted by other Respondents which included attorney's fees and costs. On January 27, 2017, these Respondents specifically requested the ALJ to allow for meaningful discovery to confirm whether in fact such fraud was taking place. See motion filed by these Respondents dated January 27, 2017.

As discovery developed, motions to dismiss were granted and following Petitioner's Second Amended Request for Hearing, these Respondents very specifically made claim for attorney's fees and costs. See Respondent's Answer to Petitioner's Second Amended Request for Hearing dated April 28, 2017. The basis for the award of attorney's fees as more particularly described were that:

> . . . these proceedings were maintained and continued frivolously. In making this determination, it is respectfully requested that this court consider the numerous petitions that have been filed by Petitioners with changing theories and arguments for recovery, the numerous arguments of Respondents in response to these changing arguments, the findings made by the court in regards to these changing arguments, the numerous times that Petitioners have failed to respond or inadequately responded to discovery, the orders entered by the court requiring discovery, the subsequent lack to respond to orders of the Judge by Petitioners, the motions and orders entered in regards to Motions to Compel and Sanctions, and the arguments made in these pleadings.

11

Discovery continued following these initial claims for attorney fees and costs. Not knowing the status of these cases, these petitioners filed an amended response to the pending requests for hearings filed by Petitioners and possible dismissal of the request for hearing with the retention of jurisdiction on the issue of assessment of costs and attorney's fees. See Request for Attorney Fees in the pleadings filed by these Respondents on July 11, 2017. In the amended response of July 11, 2017, these Respondents provided specific detail of the basis of the award of fees and costs. These details will be discussed below.

## Support for Awarding Attorney Fees and Costs

### 1. Petitioner never filed a claim of benefits which would support the payment of the drug bills in question.

In reviewing the above statutory provisions for the assessment of fees and costs, a common theme is that the asserted claim is frivolous, is not supported by material facts necessary to establish a claim or is filed without reasonable grounds. From the very beginning of this case, the ALJ in his order of February 15, 2017 had described the Petitioners' argument for reimbursement pursuant to Section 440.13(3)(d), F.S. as "making no sense," "illogical" and "unsupported by the clear language of these (statutory) provisions." In addition, Petitioners interpretation "produces a conflict with the requirement of section 440.13(3)(a) that a health care provider is not eligible to obtain reimbursement from a carrier unless the provider obtains authorization prior to providing treatment." See Order dated February 15, 2017. Even though allowing the Petitioner only one amendment to his claim, the ALJ time after time allowed amendments to the claim but Petitioners kept making the same arguments that the ALJ had initially determined made no sense.

Following Sentrix's dismissal of petitions, Petitioner Zielinski remained as the sole petitioner. By the time the Petitioner finally announced that he did not want to pursue his case

any further, and failing to respond to the ALJ's Order to Show Cause dated February 16, 2018, he had still not alleged a claim for which relief could be granted. Just these findings alone, disregarding the procedural efforts as below outlined to limit issues that would be considered by the ALJ, the enormity of the unnecessary objections to discovery by Petitioners, and finally followed by the various defenses established by Respondents during the discovery process creates an abundance of uncontroverted facts establishing that the petitions for payment of the drugs were frivolous, not supported by material facts necessary to establish a claim or filed without reasonable ground. Petitioner's ultimate dismissal of his petitions after months of litigation did not have the effect of relieving him or his attorney for liability for paying attorney fees and costs. See Section 57.105(5), Florida Statutes.

The frivolousness of a claim can be measured when the claim is initially presented to the court or at any time before trial. Although a claim may not have been frivolous when initially filed, failure to discharge a party when it becomes evident that there is no longer a justiciable claim may subject a losing party to the penalties of section 57.105, F.S. There are two prongs to the analysis under §57.105, F.S. First the court must determine whether the cause of action filed was frivolous at the time it was filed. If it was not, then the court must determine whether the claim became frivolous after it was filed. <u>Weatherby Associates, Inc. v. Ballack</u>, 783 So. 2d 1138 (Fla. 4th DCA 2001).

According to the ALJ, the initial petitions filed by Petitioner and Petitioner's attorney "made no sense," his arguments were "illogical," "unsupported by the clear language of the statutory provisions," and if interpreted the way sought by Petitioner would be in "conflict with other statutory provisions." What clearer announcement by the court could have been made that there was no legal substance to Petitioner's assertions of entitlement to be paid for the drugs. As

will be demonstrated by the subsequent discovery outlined below (including Petitioner's unsuccessful efforts to limit discovery) showing the fraudulent nature of the entire scheme to collect for the payment of the drugs, the facts did not get any better for Petitioner. Yet, it wasn't until well after huge amounts of time were expended creating substantial costs to the Respondents were the claims ultimately dismissed. As indicated above, dismissal of the claims by Petitioner himself does not preclude a finding that attorney fees and costs are payable under §57.105, F.S. It is particularly the foundation of an award when it is determined, as it was in this case early-on, that there was no basis for the claim of payment yet Petitioner failed to dismiss the claims creating enormous unnecessary costs notwithstanding the fact that the developed evidence of fraud and efforts at cover-up by Petitioner and Petitioner's attorney became worse.

At one time, a condition for awarding fees and costs pursuant to Section 57.105, Florida Statutes, was that the court must find a "complete absence of a justiciable issue of either law or fact raised by the losing party." (Even under this more strict standard, the petitions in this case were without a justiciable issue.) In 1999, the law was changed considerably. No longer are awards of fees limited to a complete absence of a justiciable issue of either law or fact. The operative standard now is that the represented losing party and counsel for his client knew or should have known that the claim asserted was not supported by the facts or law. Forum v. Boca Burger, 788 So. 2d 1051(Fla. 4th DCA 2001); Compare to the prior law – Whitten v. Progressive Casualty Insurance Company, 410 So. 2d 501(Fla. 1982). In this case, petitioner's attorney knew or should have known that her reading of the statutory provisions to support her argument that there was no need to have employer/carrier authorization to dispense and there was a statutory implied authorization in Section 440.13(d), F.S. Even if applicable in this case and even if there was no statutory requirement for an authorization to dispense and even if there was

14

no timely response to the request for this referral care to the pharmacist to dispense, the "penalty" available against Respondents would be that they could not object to the "medical necessity for such treatment," not that there was an implied authorization to dispense. This is an obvious conclusion that anyone could understand. It certainly should have been obvious when the ALJ pointed this out to the Petitioner or Petitioner's attorney three times in separate orders. Yet, the Petitioner allowed these proceedings to continue with all of Petitioner's discovery objections and procedural attempts to limit discovery that unquestionably were without a legal basis. See discussion below.

Although interpreting the law that existed prior to 1999, the court in the case of H.J.J., Inc. v. Party Productions, Inc., 738 So.2d 515(Fla. 3rd DCA 1999) found that in determining if section 57.105, F.S., fees were payable, the complaint as initially filed would be reviewed. "If the complaint passes muster at that point, section 57.105(1) sanctions are inappropriate regardless of subsequent developments." In this instance, as stated above, the petition as originally filed did not pass "muster" and it only got worse as time passed and additional discovery revealed various defenses to support the denial of claims for the payment of the drugs.

As mentioned in the preliminary statement to this verified petition, it is unknown as to the attorney responsible for fees and costs, including pre-judgment interest. The claims by Petitioner have been without merit since inception going back well before the Division of Workers' Compensation dismissed the petitions claiming entitlement to be paid for the drug bills or even before that time when the bills were initially submitted to Respondents for payment. The ALJ in his order of February 15, 2017 determined as of that date that Petitioner has had ample opportunity to discover the facts and law that possibly could support a claim for payment

suggesting that the attorney representing the Petitioner initially knew or should have known the attorney's theory of recovery was incorrect well prior to the filing of the petition.

The court in the case of Wood v. Haack, 54 So. 3d 1082(Fla. 4th DCA 2011) stated: " . . . section 57.105(1)(a) provides that fees are awarded on any claim . . . at any time . . . in which the court finds that the losing party . . . knew or should have known that a claim . . . when initially presented to the court or at any time before trial . . . was not supported by the material facts necessary to establish the claim.'" In this instance, attorney fee entitlement should go back to the original date that the drug bills were presented for payment well prior to the time the initial petition was filed. In this instance, attorney's fees could possibly be assessed against all attorneys representing Petitioner up until Petitioner became unrepresented.

### Discovery Attempts to cover up actions seeking payment of the compound drugs

When reviewing the statutory provisions above referenced, another basis for awarding fees and costs is a party's unnecessary delay and needless increases in costs. Such actions by Petitioner and Petitioner's attorney are in part outlined above. Presumably, once there was a realization by the Petitioner that he had no right to reimbursement as a matter of law, the petitions would be dismissed. This is not what occurred, however. Rather than dismissal, Petitioner and Petitioner's attorney began taking multiple "paths" to prevent Respondents from discovering information in defense of the claims, creating unnecessary delays with resulting increased costs to Respondents. This was attempted through procedural maneuvering and also by objecting to virtually every discovery effort attempted by all Respondents. Each of these attempts to stop/limit discovery will be discussed below.

a. <u>Procedural</u>

Initially, Petitioner sought to limit the issues to be decided by the ALJ for determining if the compound drugs were reimbursable to allegedly only those issues existing between the Petitioners and the Department of Financial Services (hereinafter DFS). By taking this position, Petitioners were obviously concerned about the information that would be revealed if full discovery was allowed on all possible issues and defenses by Respondents. Similarly, Petitioner took the position that Respondents were considered "intervenors" with limited discovery rights, again obviously attempting to limit Respondents' rights to discovery. The ALJ in an order dated January 20, 2017, determined that the hearing would be de novo pursuant to Section 120.57(1)(k), Florida Statutes, and that these Respondents and other employer/carriers were indeed Respondents with full rights of discovery. The ALJ's order dated March 3, 2017 reaffirmed the ALJ's initial determination that the cases would be considered de novo. Thereafter, the Petitioners unsuccessfully tried to get around these de novo rulings again in an attempt to limit discoverable information by labeling the dismissals of the petitions for reimbursement by DFS as merely a "procedural/administrative error" and that only the specific issues existing between DFS and Petitioner should be the subject of the ongoing litigation. For a third time, the ALJ ruled on June 27, 2017 that the hearing was going to be de novo with all issues being considered. Ultimately, Petitioner and Petitioner's attorney would refuse to amend their position that Respondents were intervenors in order to allow for the case to be dismissed. By that time, however, Sentrix had filed for bankruptcy and further actions by/against Sentrix in this case were stayed, stopping discovery against that company. Zielinski apparently was forgotten about by his attorney who also represented Sentrix and he remained a Petitioner until he withdrew his claim by himself without an attorney.

17

It was shortly after the June 27, 2017 order that Sentrix filed its Suggestion of Bankruptcy on July 19, 2017. Having been unsuccessful in curtailing discovery by limiting the issues to be considered by the ALJ and labeling Respondents as intervenors with limited discovery rights, Sentrix sought to limit the issues and discovery by trying to extend the bankruptcy automatic stay provisions in the Sentrix bankruptcy to these proceedings. A motion to extend the Sentrix bankruptcy stay to these proceedings was denied and an order was entered to this effect by the bankruptcy judge. On Motion for Rehearing, the stay request was again denied.

The bankruptcy court in its orders denying the Motion to Extend the Stay to these proceedings involving Zielinski and the Motion for Rehearing simply stated that the motions to stay were "denied" without explanation. It took two more hearings before the bankruptcy court based on motions filed by these Petitioners for the bankruptcy judge to state that denial of the stay related to these specific cases. Prior to that time, the attorney representing Sentrix (and Zielinski at one time) would not agree to these Respondents seeking a specific ruling from the bankruptcy court that the denial of the state related to this case. Finally, after a Motion to Clarify was filed by these Respondents, the bankruptcy judge stated that the denial of the stay applied specifically to these proceedings. Until the clarification order, the ALJ was understandably not able to determine if the stay applied to these cases or not and whether he had jurisdiction to proceed.

After four (4) hearings (2 related to the initial Motion to Extend the Stay to these proceedings and 2 relating to a clarification of the bankruptcy judge's order) before the bankruptcy judge and the filing of several motions clarifying the obvious rulings by the bankruptcy judge's decision (decisions that were obvious to the attorney representing Sentrix in

the bankruptcy proceedings since he had participated in the hearings on the stay requests and had actually filed the Motion to Extend Stay) concluding the stay did not apply to these proceedings, the Petitioner turned his attention to these DOAH proceedings and asserted that: ". . . it is virtually impossible for the present case to proceed at DOAH without encroaching upon the jurisdiction of the bankruptcy court." This was virtually the same argument that was rejected by the bankruptcy court when Sentrix was trying to extend the automatic stay to these proceedings. The practical effect of this argument by Sentrix's attorney was that Sentrix was trying to stay or delay these proceedings by filing such a motion. The court recognized what Sentrix's attorney was doing and rejected the motion. See this court's order of May 11, 2018.

In summary, the attorney for Zielinski and Sentrix was continuously and needlessly increasing the costs of defending these cases by first attempting to limit the issues to be ruled upon by the ALJ as opposed to a de novo ruling that was decided by the ALJ on three different occasions. When that failed, the attorney sought to label Respondents as intervenors with limited discovery rights. When these efforts failed, Sentrix filed for bankruptcy seeking to extend the bankruptcy stay to these proceedings. When that failed, the then attorney attempted to prevent these Respondents from clarifying the bankruptcy court's order as to the denials of stay and whether the denial of stay applied to these proceedings. When that failed, the then attorney sought to delay these proceedings and delay discovery by filing a motion in these DOAH proceedings which was tantamount to a stay request. This too was denied. This procedural "gamesmanship" resulting in the intentional delays of the final determinations of the various frivolous claims have resulted in substantially increased costs justifying the sanctions as herein sought.

But such procedural attempts at delay/preclusions of discovery were even more exacerbated by the numerous objections, motions for protective orders and failures to respond to requests for discovery filed by Petitioner and petitioner's attorney as hereinafter outlined, further supporting the allegations that Petitioner and Petitioner's attorney(s) conducted themselves for improper purposes by participating in these proceedings to harass or cause unnecessary delay in support of claims that the ALJ had already ruled were without a legal base for which benefits/payments could be awarded.

a. Specific Objections to Discovery

Having failed to limit discovery or delay these frivolous claims through the filing of various procedural processes as outlined above, Petitioner Zielinski's attorneys sought to preclude discovery by the following actions, notwithstanding the ALJ's warning very early in these proceedings as found in his order of March 9, 2017 that "normally, at this point, the Administrative Law Judge would grant the request for attorney's fees pursuant to Florida Rule of Civil Procedure Rule 1.280, which has been incorporated by Florida Administrative Code Rule 28-106.206 for failing to provide discovery. However the circumstances of the change in counsel renders this sanction inappropriate at this time . . . ."

1. Petitioner filed numerous Motions for Protective Orders seeking to restrict legitimate discovery efforts through depositions of persons whose testimony was unquestionably relevant (all motions denied by ALJ) including the depositions of :

        a. Spencer Malkin. (Interspousal communications were restricted. At no time was there an effort to obtain interspousal communications – Malkin was an owner of all entities involved in trying to get the payment for the drugs.

Motion for Protective Order denied in orders dated 6/28/17 and May 2, 2017;

b.  Samuel Gerson – the doctor fraudulently prescribing the medication in question.  ALJ denied Motion for Protective Order 6/27/17;

c.  Dr. Maria Kendall – physician appointed to supervise Dr. Gerson. Cancelled by parties following Notice of Bankruptcy;

d.  Nicholas Spagnuolo and other non-parties Motion for Discovery stay denied 3/7/17. (Included in Motion was HealthIE Network, the "medical clinic" that Dr. Gerson allegedly worked for.  All of these parties were part of the drug paying scheme.)

2.  Failure to timely and appropriately respond to interrogatories.   Orders against Petitioners entered on:

a.  2/22/17

b.  3/9/17

c.  3/31/17 – Attorney for Petitioner advised the court that interrogatories were answered without her authorization as the attorney for Petitioners. Who actually filed Answers to Interrogatories in the name of the Petitioners without authorization was never determined.

d.  4/3/17

e.  5/2/17

f.  6/27/17

3.  Failure to answer requests for admissions – Order entered against Petitioners concerning Requests for Admissions.

a. 2/24/17

4. Miscellaneous – Orders entered against Petitioners.

    a. Order Granting Motion to Compel Designation of Appropriate Corporate Representative for Petitioners. Petitioner's attorney had previously designated her administrative assistant as corporate representative. After that attempt to subvert the orderly discovery process, the wife of Spencer Malkin was named the corporate representative. This choice was even worse than the administrative assistant since Mrs. Malkin apparently knew little, if anything, about the corporate operations of the scheme (or at least that was what she testified to).

    b. Order Denying HealthIE Network Objection to Produce Medical Evidence May 16, 2017. (HealthIE Network was part of scheme to require payment of medical bills.)

    c. Order entered by ALJ on March 7, 2017 denying Petitioners' Motion to Stay Discovery filed on Behalf of Non-Parties HealthIE Network, Dr. Samuel Gerson and Nicholas Spagnuolo. (Parties that were part of the drug bill reimbursement scheme.)

    d. On February 27, 2017, a request was made by these Respondents to produce recordings of statements made to and by injured workers to employees or to agents of HealthIE Network that prescribed medication for which reimbursement was sought. Those recordings were never produced based upon statements by Petitioner's counsel that none existed. Notwithstanding such assertions by Petitioner's attorney, recorded

statements/emails and other documents were obtained from a third party vendor demonstrating over 30,000 such documents. A subpoena duces tecum for these recorded statements/emails and other documents was issued on 5/18/17. The non-party objected to production of these documents and filed Motion for Protective Order suggesting that the documents to be produced may be confidential information of Petitioners or of Petitioners' parent company. An order was entered by the ALJ on June 27, 2017 denying the Motion for Protective Order since Petitioners never responded to Motion for Protective Order filed by the third party vendor. There was no evidence that the information to be produced was confidential, proprietary property of Vividus LLC, parent company of Petitioner. Accordingly, the Motion for Protective Order was denied.

e. On May 31, 2017, Petitioners cross-noticed the taking of the deposition of Spencer Malkin, owner of all business entities for which Petitioner was a part of. Documents were requested to be brought to the deposition including audio recordings, emails between various parties and Malkin including Gerson, HealthIE Network, Sentrix and others. Approximately 10 pages of documents were produced. The third party discovery referenced in subparagraph "d" produced approximately 30,000 such documents with hundreds of recorded statements. Petitioner's attorney's statement and Malkin's statement that these documents did not exist were complete fabrications.

23

f.  Petitioner's attorney directing clerical/paralegal staff to sign interrogatories certifying to the truth of the matters contained in interrogatory answers when in fact such answers were not truthful.   See deposition of Maria Yeager.

g.  Failure of principles of various entities involved in the drug payment scheme to produce at the time of the June 28-30 depositions meaningful and complete information (in addition to "d" and "e" above).  In scheduling these depositions, a subpoena duces tecum was issued requesting that the owners of the Petitioner Pharmacy (when Sentrix was a party) or other corporate entities involved in drug payment scheme that is the subject of these proceedings to bring certain documents.  The owners asserted that they were not the proper parties to respond to the production of documents and therefore did not produce them.  See depositions of Spencer Malkin and Alex Chervinsky.

h.  Continuous requests for delays in response to pleadings filed with the ALJ's indulgence in allowing for such.

i.  Witness of Petitioner was allegedly unable to testify pursuant to a properly noticed deposition because of alleged stress resulting in the need for medication.

j.  The ultimate mockery of these proceedings by Petitioner and Petitioner's counsel is the filing of a Motion to Dismiss the outstanding petitions filed after all of the delays and unnecessary contributions to the extraordinary costs of defending these spurious claims that have no basis in law or in fact,

only to have the dismissal rejected by the ALJ because Petitioner's counsel refused to allege these parties were Respondents and not intervenors.

### Defenses

The final basis for establishing the right to be paid attorney's fees and costs in these proceedings is totally independent of the fact that Petitioner and his attorney have never stated a cause of action for which relief can be granted and Petitioner has unreasonably continued to assert entitlement for relief unreasonably increasing costs that have been incurred. Petitioner and Petitioner's attorney are especially egregious when considering the defenses asserted by these Respondents; defenses that were well known or should have been known by Petitioner and his attorney prior to the time of the filing of the petitions and certainly even prior to the time when the bills were actually requested to be paid. Respondents' defenses all answer the question as to "why" Petitioner and his attorney were so sensitive to discovery and the ALJ's ruling that these cases would be considered de novo and not just on the basis of the original dispute existing between Petitioner and DFS.

Indeed, the entirety of the scheme sanctioned by this request for the payment of fees and costs is not just whether the claim for payment was pursued in this administrative setting based on whether the claim was "frivolous" (Section 120.569 and Section 440.32, Florida Statutes), not supported by the material facts (Section 57.105, Florida Statutes), or the claim for payment was made without reasonable grounds (Section 440.32, Florida Statutes). The substantial "wrongful purpose" justifying fees and costs is Petitioner and Petitioner's counsel asserting claims supported by criminal misconduct.

25

From the inception of these proceedings, these Respondents have asserted the fraud defenses as the basis for the denial of the claimed reimbursement requests of the drug bills in question. The fraud provisions in the workers' compensation statute applicable to these proceedings are section 440.105(4)(b)1, F.S., 440.105(4)(b)3 F.S., 440.105(4)(b)4, F.S., and 440.105(4)(f)3, F.S. Judging from the amounts involved perpetuating the scam by claiming payment of the drug bills in these proceedings as well as those cases pending that have not been referred to DOAH for a hearing, the offenders (whoever that might be) would be guilty of a first degree felony. In addition, such conduct would constitute "insurance fraud" as defined in 817.234, F.S. The fact that these defenses and the criminal violations resulting therefrom unquestionably establish that the claims were frivolous, not supported by material facts and filed without reasonable grounds that support the claims for attorney fees and costs.

In summary, under these workers compensation fraud statutes, it is unlawful to make false, fraudulent or misleading oral or written statements for the purpose of obtaining any benefit or payment under the Workers' Compensation Act. Fraud is committed regardless of who or what entity makes false statements to obtain a payment under the workers' compensation system (i.e., injured worker, employer/carrier, attorney, agent, etc.). Such activity is made criminal by statutory mandate. See also CDL v. Corea, 867 So.2d 639 (Fla. 1st DCA 2004). (Even though misstatements did not rise to the level of criminal fraud, denial of benefits should have been ordered if the misstatements were made in order to obtain workers' compensation benefits; Village Apartments v. Hernandez, 856 So.2d 1140(Fla. 1st DCA 2003) (Misstatements to doctor about past medical history if made to collect benefits under the workers' compensation system constitutes fraud and can be the basis for denial of claims); Lee v. Volusia County School Board, 890 So.2d 39(Fla. 2st DCA 2004) (Denial of claim based on misstatements in order to obtain

workers' compensation benefits does not violate the due process provisions of the Constitution); Weaver v. MBM, 936 So.2d 732 (Fla. 1st DCA 2006) (Denial of benefits under the Workers' Compensation Act for misstatements in order to obtain such benefits was not unconstitutional under the equal protection provisions of the Constitution); Singletary v. Yoder's and Ameritrust Ins. Corp., 871 So.2d 289(Fla. 1st DCA 2004) ( Denial of benefits based on misstatements to claim workers' compensation benefits can be done at any time, even though a claim is originally accepted as compensable); Laboo v. State of Florida, 715 So.2d 1034(Fla. 1st DCA 1998) (Anyone convicted of workers' compensation fraud under Section 440.105 can also be guilty of grand theft under Section 813.014, Florida Statutes. The legislative intent in allowing for a criminal conviction for workers' compensation fraud and any other applicable crime is that such is allowed); Medina v. Gulf Coast Linen Services, 825 So.2d 1018(Fla. 1st DCA 2002) (Altering a prescription of medication can be the basis of a fraud defense denying benefits); Village of North Palm Beach v. McKale, 911 So.2d 1282(Fla. 1st DCA 2005) (In denying a claim because of false, fraudulent, incomplete or misleading statements for the purpose of obtaining workers' compensation benefits, it is not necessary that such a statement be material to a claim but only made for the purposes provided for in the statute); State of Florida v. Brock, 138 So.3d 1060 (Fla. 1st DCA 2014) (A defendant can be guilty of a criminal violation of Section 440.105 irrespective of the existence of any workers' compensation claim).

The following misrepresentations for the purpose of collecting benefits payable under the Workers' Compensation Act existed at the time the drug bills were initially presented for payment well prior to the filing of the petitions for payment by Respondents. (It should be noted that the developed facts in regards to these assertions of fraud are uncontroverted in some

instances and in other situations are so established by the facts that there is a preponderance of the evidence that the assertions can be accepted as fact.)

1.    Misrepresentations that the medicine in question was prescribed by a licensed medical doctor.

      a.  To all including injured workers receiving workers' compensation benefits, employers, insurance companies, the Division of Workers' Compensation, payors, and for that matter the general public, it was asserted that the drugs in question had been prescribed by a medical doctor. There is no question that the compound creams, because of their content, required a prescription as a matter of law.

      b.  To prescribe the medication, a doctor by the name of Samuel Gerson was employed by the parties involved in the scheme to have the medications paid by the employer/carriers involved in the workers' compensation industry (hereinafter referred to as the scheme). Dr. Gerson had been the subject of numerous investigations/ethical and criminal charges (primarily related to drug violations) in regards to his medical practice. He applied for and was granted a limited license to practice medicine in the State of Florida. The majority of his violations had occurred in California. As a condition to practicing medicine in Florida, Dr. Gerson was required to be supervised by another doctor which, according to his conditional license, was under the following terms:

            A.    Direct Supervision. For one (1) year, Dr. Gerson shall practice medicine only under the direct supervision of a Board-approved allopathic physician, hereinafter referred to as the "supervisor." Direct supervision requires the physical presence

of the supervising physician in the building so that the supervising physician is immediately available when needed. Dr. Gerson shall provide the supervisor with a copy of this Order, and other relevant orders, if any. Dr. Gerson shall allow the supervisor access to his medical records, calendar, patient logs, or other documents necessary for supervision as detailed below.

c.  The principals in the scheme were well aware of these conditions to practice medicine and in fact helped locate a supervising doctor for Dr. Gerson. The supervising doctor was Dr. Maria Kendall, a dermatologist in Coral Gables, Florida. During the supervisory period, Dr. Kendall certified that Dr. Gerson was providing oversight of dermatological patients within the scope of Dr. Gerson's training. Also during this supervisory period, Dr. Gerson and Dr. Kendall both certified to the Board of Medicine that Dr. Gerson had conducted physical examinations only on dermatological patients.

d.  Unknown to Dr. Kendall and absolutely contrary to certifications made by Dr. Gerson and Dr. Kendall, Dr. Gerson was conducting telephone "exams" of injured workers on his cell phone, prescribing the same creams for pain and scars for literally hundreds of patients and electronically transferring the prescriptions to the pharmacy that participated in the scheme. The injured workers that were prescribed the medication were not Dr. Kendall's dermatological patients or individuals in need of treatment by a dermatologist, unless the worker suffered a workplace injury that required treatment by a dermatologist.

e.  The "exams" by Dr. Gerson were not under the supervision of Dr. Kendall and were not conducted in Dr. Kendall's office. Rather, Dr. Gerson

29

performed these examinations and wrote prescriptions from his apartment or at the home of Dr. Gerson's parents in South Florida. Dr. Gerson in his deposition confirmed that he was involved in this unauthorized "practice of medicine." He was not licensed to prescribe medication in the manner in which he did without being supervised by his supervising doctor. Not only was there a misstatement by those involved in the scheme as to the prescribing doctor's qualifications and licensure, the dispensing of such medication was not legitimate based on a valid prescription by a licensed physician. As a matter of law, the alleged dispensed drug was not validly dispensed and accordingly not payable.

f.  Those involved in the scheme were well aware of the fact that Dr. Gerson was not licensed to practice medicine outside of the confines of supervision by Dr. Kendall. They were aware of the conditions that were placed upon Dr. Gerson's ability to practice medicine but hired him anyway and arranged for his supervising doctor. They also knew that Dr. Gerson was not providing medication under the supervision of Dr. Kendall. According to the claims for reimbursement and the process followed in dispensing the medication, confirmation was made with Dr. Gerson's office prior to dispensing the medication that he was indeed the authorized doctor. Dr. Gerson's "office" was a UPS box, which obviously could not be contacted for confirmation. The "medical exam" of injured workers took place in Dr. Gerson's apartment or at his parents' home. These locations were not in the office of Dr. Kendall

or under her supervision; therefore, the prescriptions were not valid in the first instance and a violation of the doctor's ability to practice medicine.

g. Not only is it a violation of the fraud provisions of the workers' compensation statute that would preclude the payment of the medications, it is a violation of criminal statutes to issue or dispense prescription drugs without a valid medical prescription. Also, this constitutes insurance fraud.

2.    Misrepresentations made by telemarketers promoting the scheme to injured workers that the medication had been authorized by the employer/carrier or by the Division of Workers' Compensation and the medication was free to the injured worker.

a. As confirmed by the recorded telephone conversations obtained without objection by Petitioner or Petitioner's attorney from third party vendors as above referenced, the telemarketers for the scheme represented to injured workers that they were working for or in coordination with the employer/carrier or the Division of Workers' Compensation, that the creams in question had been authorized by the employer/carrier or Division to be dispensed to the injured worker without charge, and all the injured worker had to do was to complete some paperwork and be examined by a doctor (Dr. Gerson) over the telephone. This was a complete fabrication. The creams had never been authorized by the employer/carrier or Division of Workers' Compensation. The participants in the scheme had never worked with or coordinated care with the employer/carrier or the Division.

b. Statements were false, fraudulent, or misleading for the purpose of obtaining payments under the workers' compensation system and as such were not

payable.   In addition, the statements constitute criminal misconduct and

insurance fraud.

c. According to the designated corporate representative's depositional testimony,

it was the telemarketer's responsibility to:

"Q. Okay, The goal is to call as many people on this list as possible; is that
right?
A. The goal is to educate as many people as possible, yes.
Q. And how do you do that, by calling them?
A. By calling.
Q. When you say educate them, what are educating them about?
A. The opioid addition in this country is a terrible epidemic.  I think we all
know that. The surgeon general came down with a call for action for doctors
to avoid prescribing opioids.  So we - - as much as everyone wants to slam us,
we generally have - - are good people who have a good cause in mind.  So we
don't believe I opioid addiction.  So we have an alternative treatment for pain.
So that's what we're educating our pa – these patients about."

In reviewing the recorded conversations referenced above, this did not

happen.  No effort was made to educate those individuals about the opioid

epidemic.  All statements made by the telemarketers were for the explicit

purpose of selling the compound drugs.

3.    Misrepresentations made as to licensure of entities that were a part of the scheme.

a. Dr. Gerson was employed by an entity known as HealthIE Network LLC

(hereinafter HealthIE Network). Medical bills were submitted for payment to

this entity for the "physical examination" and the prescription of the

medications involved in the scheme.  Bills for such services were either sent

out in the name of Dr. Gerson or in the name of HealthIE Network.  Both

Gerson and HealthIE Network use the same FEIN for tax purposes.  HealthIE

Network was advertised as or represented to be for billing purposes or

otherwise a health care facility entitled to reimbursement for medical services

rendered, in this case under the Florida workers' compensation system.  As a matter of fact, the only way that HealthIE Network could be paid was if it qualified as a health care facility.

b.  HealthIE Network in fact was not licensed as a "health care facility" at all times relevant to these proceedings. And the product of its services including the prescriptions it issued, and charges for physical exams and the prescribing of the medications in question, would not be payable under the Workers' Compensation Act.  (It has already been established that Gerson was not a licensed physician in the prescribing of the drugs.  See above discussion.)

c.  In accordance with §440.13(a), F.S., a "health care provider" is entitled to be paid under the Workers' Compensation Act and the products of his or her services are payable.  As defined in §440.13(1)(g), F.S., a "health care provider" includes a "health care facility."  Section 440.13(1)(f), F.S., defines a "health care facility" as an entity licensed under several provisions of the Florida Statutes.  The entity that is referenced that is applicable to HealthIE Network is Chapter 400, F.S. In reviewing Chapter 400, the only way that HealthIE Network would be able to get a license under this chapter is to qualify as a "not for profit" entity.

d.  HealthIE Network was originally organized as a "for profit" LLC and as such would not qualify as a "health care facility" entitled to payments under the workers' compensation system.  It should be noted that HealthIE Network was subsequently reincorporated as a non-profit LLC for obvious reasons and was issued a license as a "health care facility."  However, prior to that time and

during the times relevant to these proceedings, HealthIE Network was not licensed.

e. Not only are the prescription charges unlawful and non-compensable, the owners of HealthIE Network operating an unlicensed facility are guilty of a third degree felony under section 400.9935, Florida Statutes. (Operating as an unlicensed entity, HealthIE Network generated substantial revenue for its owners which the owners should reimburse to employer/carriers.)

4. <u>Misrepresentations made by parties in the scheme to obtain telemarketing licensure.</u>

a. In order for HealthIE Network or other entity to telemarket the scheme (as was the case at all times relevant to these proceedings), a license had to be obtained. As a part of the licensing process, the applicant must provide a script of what the telemarketers will advise those who are contacted by the telemarketers. See Section 501.605(2)(1)3, Florida Statutes. All participants (corporate entities) in the scheme applied for and were granted a license to telemarket.

b. Presenting false information on the application to telemarket constitutes a criminal offense punishable as a third degree felony. See Section 775.082, Florida Statutes, Section 775.083, Florida Statutes, and Section 775.084, Florida Statutes.

c. The following statements contained in the telemarketing applications including the provided script are not true:

1. HealthIE Network is a "medical practice." (See above. HealthIE Network was not a licensed medical practice.)

2. A board certified physician would determine the injured worker's need for the compound drugs. (See above. Dr. Gerson is not board certified and is not even a licensed physician for the activities he was performing in prescribing the medications in question. He is not licensed to perform and does not have the facilities to perform the tests recommended by the manufacturer of the chemicals contained in the compound medications as hereinafter provided.)

3. The compound medication recommended is 100% payable by your workers' compensation carrier. (The medication is not covered by workers' compensation if not authorized specifically by the employer/carrier. There are over 600 pending cases where carriers are not paying for these compound drugs. See discussion above.)

4. The telemarketer got the name of the injured worker either from the injured worker, someone in the household of the injured worker or even a family member. (The telemarketer actually got the injured worker's name and contact information by asking the Division of Workers' Compensation for the names of injured workers during certain periods of time. These requests are made on a continuing basis.)

5. HealthIE Network is located at 43 South Powerline Road, Pompano Beach, Florida. (The mailing address is this address. However, this is a

UPS store for which HealthIE Network rented a post office box. This is not an office location.)

6. The compound cream "doesn't effect your liver or kidneys." This is false information, known to be false by participants in the scheme. The chemicals in the compound cream all have warnings about having a physician check liver and kidney function periodically, as the chemicals are excreted either through the liver or through the kidneys.

<u>Claim for Attorney Fees, Costs and Pre-judgment Interest</u>

To this point, the attorney representing these Respondents has expended 480.7 hours in the defense of this case representing both Respondents. This time includes time expended in the preparation of this Verified Petition requesting the payment of fees and costs. The undersigned understands that the time expended in calculating the total fee payable plus costs cannot include the time in establishing the amount of the fee and costs. It is assumed that petitioner and Petitioner's attorney are denying entitlement to the claimed fees and costs being claimed against them. If this is not the case and entitlement to the fees and costs are stipulated to, any time in preparation of this Verified Petition will be deducted from the total as above stated. Prejudgment interest is also being claimed.

WHEREFORE,

it is respectfully requested that a final hearing be scheduled to determine entitlement to fees and costs as herein requested including pre-judgment interest. In addition, it is requested that the amount of the said attorney fees, costs, and prejudgment interest be established with post-judgment interest being payable as provided by law. Petitioner and Petitioner's attorney are being served personally to ensure they receive proper notice of this request for fees,

costs, and pre-judgment interest. At the time of Petitioner's withdrawal of his claims for reimbursement for the compound drugs, he was not represented. Petitioner's attorney has not been a part of this case for some time. Respondents reserve their right to amend their claim for fees, costs and pre-judgment interest against any attorneys representing Petitioner subsequent to the representation of attorney Andrea M. Franklin and whether they were participants in any of the conduct warranting the assessment of fees, costs and prejudgment interest as herein alleged.

I hereby certify that a true and correct copy of the foregoing has been furnished upon the parties listed below via U.S. Mail or email on this _8th_ day of June, 2018.

JAMES N. McCONNAUGHHAY
McCONNAUGHHAY, COONROD,
      POPE, WEAVER & STERN, P.A.
1709 Hermitage Boulevard, Suite 200
Tallahassee, FL 32308
Fla. Bar No.: 0119826
jnmcconnaughhay@mcconnaughhay.com
850.222.8121
Attorney for Publix Supermarkets Inc. and Walmart Inc.

SWORN TO AND SUBSCRIBED before me on this ___ day of _____, 2018,

by James N. McConnaughhay, who is personally known to me.

NOTARY PUBLIC
State of Florida



ROSANN B. SHAFFER
Commission # FF 952175
Expires March 26, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

Andrea Franklin, Esq. (personally served)
Rubinton & Associates
3801 Hollywood Blvd.
Hollywood, FL 33302-6758

Tabatha Harnage, Esq.
200 East Gaines Street
Tallahassee, FL

Tim Jesaitis, Esq.
The Law Office of Tim Jesaitis
P.O. Box 388
St. Petersburg, FL 33731-0388

Nicole Florentino, Esq.
Tara Said, Esq.
Eraclides, Gelman, Hall, Indek, Goodman,
  Waters & Traverso
1661 Sandspur Road
Maitland, FL 32751

Matthew Lavisky, Esq.
Butler Weihmuller Katz Craig LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602

Brian Dowling, Esq.
The Workers' Compensation Trial Group
100 Terra Mango Loop, Suite A
Orlando, FL 32835

Camille Iurillo, Esq.
5628 Central Avenue
St. Petersburg, FL 33707

James T. Armstrong, Esq.
Walton Lantaff Schroeder & Carson LLP
7680 Universal Blvd., Suite 260
Orlando, FL 32819-8961

Kip Lassner, Esq.
Cole Scott & Kissane, P.A.
600 North Pine Island Road, Suite 500
Plantation, FL 33324-1311

Kimberly Fernandes, Esq.
Kelley Kronenberg, P.A.
201 South Monroe Street, 5th Floor
Tallahassee, FL 32301

Jordan Rappaport, Esq.
Squires Building, Suite 203
1300 North Federal Highway
Boca Raton, FL 33432

Kenneth Zielinski (personally served)
15688 80th Drive North
Palm Beach Gardens, FL 33418

Thomas Nemecek, Esq.
Department of Financial Services
200 E. Gaines Street
Tallahassee, FL 32399

EXHIBIT "C"

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

SENTRIX PHARMACY AND DISCOUNT, LLC,
and KENNETH ZIELINSKI,

      Petitioners,

v.                                      Consolidated Case No. 16-7158

DEPARTMENT OF FINANCIAL SERVICES,
DIVISION OF WORKERS' COMPENSATION,
ET AL,

      Respondents.

_____/

## ILLINOIS NATIONAL INSURANCE COMPANY'S MOTION TO ASSESS ATTORNEY'S FEES AND COSTS AGAINST PETITIONER KENNETH ZIELINSKI

      **COMES NOW** the Respondent, ILLINOIS NATIONAL INSURANCE COMPANY, by and through the undersigned counsel, and hereby moves this Court to assess attorney fees and costs against Petitioner Kenneth Zielinski, pursuant to sections 120.595, 120.569, and 57.105, Florida Statutes, and in support of said motion states the following:

      1.      Petitioner, KENNETH ZIELINSKI, along with his employing entity, Sentrix Pharmacy & Discount, LLC, filed Petitions for Resolution of Reimbursement Disputes against Respondent, ILLINOIS NATIONAL INSURANCE COMPANY, which initiated case numbers 16-7164, 16-7165, 16-7166, 16-7167, 16-7168, 16-7169, and 16-7341.  These cases were subsequently consolidated with several other cases under case number 16-7158 in an Order of Consolidation issued by this Court on December 15, 2016.  Although not a named party at that point in the litigation, Kenneth Zielinski, a pharmacist, signed all of the reimbursement disputes issued by Sentrix to the Division of Workers' Compensation, as he was the only individual or

1

entity qualified to log such disputes in light of his status as a statutorily defined "health care provider."

2.      Pursuant to this Court's Order Memorializing Rulings During January 19, 2017, Telephone Conference, dated January 20, 2017, Respondent filed Illinois National Insurance Company's Motion to Intervene/Motion to be Named as Co-Respondent on March 1, 2017. In that Motion, Respondent asserted that part of the relief sought by Respondent in the consolidated proceedings was an award of prevailing party attorney fees and costs pursuant to section 120.595, Florida Statutes.

3.      On March 15, 2017, this Court issued an Order adding pharmacist Kenneth Zielinski as a Petitioner to the consolidated cases in light of the statutory definition of a "health care provider" which is authorized to seek reimbursement through proceedings such as the ones implicated in the consolidated cases.

4.      Respondent filed Illinois National Insurance Company's Response to Petitioner's Second Amended Request for Hearing on May 3, 2017, asserting several bases for denial or dismissal of Petitioner's Second Amended Request for Hearing.

5.      Petitioner voluntarily dismissed case number 16-7341 from the pending litigation by Petitioner's Notice of Voluntary Dismissal filed on February 9, 2017.

6.      On June 23, 2017, Sentrix filed an Amended Motion by Interlineation to Withdraw Certain Requests for Hearing, which included case numbers 16-7164 through 16-7169. On September 15, 2017, Petitioner sent a letter to this Court indicating that he did not intend to pursue the Petitions for Hearing filed. This Court has ultimately ruled that all claims pending under the consolidated case have been withdrawn by Petitioner in its May 11, 2018, Order, reserving jurisdiction to address any and all carrier or Agency claims for attorneys' fees

2

and costs asserted against any person other than Sentrix (due to the bankruptcy stay preventing any action on litigation pending against Sentrix).

       7.      Respondent moves this Court to assess attorney's fees and costs against Petitioner KENNETH ZIELINSKI, pursuant to section 120.595, Florida Statutes, in the following manner:

       a.      Pursuant to subsection (c) of 120.595, applicable to challenges to agency action, this Court shall determine whether any party participated in the proceedings for an improper purpose, which can be met by finding that the nonprevailing party "participated in two or more other such proceedings involving the same prevailing party and the same project as an adverse party and in which such two or more proceedings the nonprevailing adverse party did not establish either the factual or legal merits of its position." Petitioner meets this provision in two ways. First, the Agency found that Petitioner failed to meet its burden of proof on the reimbursement dispute when the Agency dismissed the reimbursement dispute on each and every claim raised by Petitioner against Respondent, leading to this Chapter 120 proceeding. Second, this Court found in its May 11, 2018, Order that Petitioner Zielinski has withdrawn his Administrative Hearing Petition in each of the above-styled cases and, by doing so, "has forfeited his right to an administrative hearing on the issues raises (sic) by these petitions, as amended." Consequently, Petitioner Zielinski failed to establish either the factual or legal merits of his position in each of the seven claims against Respondent which are consolidated under case number 16-7158..

       b.      Pursuant to subsection (1)(e)(3) of 120.595, "(i)n no event shall the term 'nonprevailing party' or 'prevailing party' be deemed to include any party that has intervened in a previously existing proceeding to support the position of an agency." However, this provision

3

does not apply here to preclude Respondent from pursuing prevailing party attorney fees and costs. In Illinois National Insurance Company's Motion to Intervene/Motion to be Named a Co-Respondent, filed March 1, 2017, Respondent asserted its substantial interests in the litigation defended by the Department of Financial Services, Division of Workers' Compensation. Respondent's intervention was not merely for the purpose of supporting the position of the Division. Respondent's purpose was two-fold: (1) to share in the work and expense of gathering discovery intended to build a defense against the claims asserted specifically against Respondent Illinois National Insurance Company and asserted in general against all other employers and carriers implicated in Petitioner's numerous claims for reimbursement; and (2) to protect Respondent's individual interests in obtaining a dismissal or denial of Petitioner's claims for reimbursement of significant medication bills asserted against Respondent. Illinois National Insurance Company became a co-respondent in this litigation, not merely an intervenor in support of an agency position. Therefore, attorney's fees and costs should be awarded to Respondent as a prevailing party in this litigation.

      8.    Alternatively, Respondent moves this Court to assess attorney's fees and costs against Petitioner KENNETH ZIELINSKI, pursuant to section 120.569, Florida Statutes, applicable to proceedings in which the substantial interests of a party are determined by an agency, in the following manner:

      a.    Subsection 2(e) of 120.569 states:

> All pleadings, motions, or other papers filed in the proceeding must be signed by the party, the party's attorney, or the party's qualified representative. The signature constitutes a certificate that the person has read the pleading, motion, or other paper and that, based upon reasonable inquiry, it is not interposed for any improper purposes, such as to harass or to cause unnecessary delay, or for frivolous purpose or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in

4

> violation of these requirements, the presiding officer shall impose upon the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Petitioner signed the reimbursement disputes filed with Respondent Department of Financial Services, Division of Workers' Compensation.    Petitioner's counsel signed the pleadings furthering, or otherwise hindering, the administrative appeal of the agency-level outcome of the disputes.

      b.     The litigation in this case began with Petitioner's first Request for Hearing filed on December 6, 2016. Thereafter, on January 18, 2017, attorneys for Sentrix and Petitioner Zielinski filed a Motion for Protective Order to avoid the deposition of Petitioner Zielinski, stating within the motion that the deposition was not reasonably calculated to lead to the discovery of admissible evidence.  The motion also states that Petitioner was being "unduly compelled to produce a person with little to no knowledge of the Petitioner's procedure for obtaining requests for authorization." Yet Petitioner Zielinski is the only entity qualified to pursue prescription reimbursements under the law.  Sentrix withdrew its requests for hearings collectively on June 22, 2017. Petitioner Zielinski never withdrew his requests for hearings and never proceeded with the prosecution of his claims. On September 15, 2017, Zielinski sent a letter to this Court indicating that he did not intend to pursue the claims for reimbursement, which this Court gratuitously deemed a withdrawal of the Petitions by Zielinski.   From December 6, 2016, through September 15, 2017, Petitioner's pleadings caused unnecessary delay in the prosecution of the consolidated claims or were otherwise frivolous in asserting no knowledge of the reimbursement process when Petitioner himself signed the reimbursement disputes initiating this litigation.

9.    Alternatively, Respondent moves this Court to assess attorney's fees and costs against Petitioner KENNETH ZIELINSKI, pursuant to section 57.105, Florida Statutes, in the following manner:

      a.    Subsection (1)(a) of 57.105 states:

(1)    Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

      (a)    was not supported by the material facts necessary to establish the claim. . .

Petitioner asserted from the initiation of this case that he was filling prescriptions for authorized medical providers and that he had the right to rely upon implied authorization to dispense the medications. This Court rejected that theory in its February 15, 2017, Order. An Amended Petition for Hearing was filed on March 6, 2017, asserting the same theory already rejected by this Court. A Second Amended Petition for Hearing was filed on April 28, 2017. This one was eventually withdrawn solely by Sentrix on June 22, 2017. Petitioner never supported his claim with material facts.

      b.    Subsection (5) of 57.105 states:

In administrative proceedings under chapter 120, an administrative law judge shall award a reasonable attorney's fee and damages to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney or qualified representative in the same manner and upon the same basis as provided in subsections (1) – (4). A voluntary dismissal by a nonprevailing party does not divest the administrative law judge of jurisdiction to make the award described in this subsection.

6

This subsection is one of the main reasons for this motion. It applies the civil proceedings rule to administrative proceedings such as this case, and it maintains jurisdiction in this Court for the award, or sanction, of attorney's fees and costs even after a voluntary dismissal of a losing claim.

10.    Counsel for Respondent ILLINOIS NATIONAL INSURANCE COMPANY has expended 229.90 hours in defending these multiple claims to date.

**WHEREFORE,** Respondent ILLINOIS NATIONAL INSURANCE COMPANY moves this Court to enter an order assessing attorney fees and costs incurred by Respondent in litigating the consolidated case in general and the specifically enumerated cases listed herein, against Petitioner Kenneth Zielinski under any or all of the statutory bases asserted herein.

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that a true and correct copy of the foregoing was served electronically on June 11, 2018 to each of the following counsel of record, and via U.S. Mail to unrepresented Petitioner Kenneth Zielinski:


(THIS SPACE INTENTIONALLY LEFT BLANK)

Thomas Nemecek, Esq.
Tabitha Harnage, Esq.
Department of Financial Services
Office of the General Counsel
200 E. Gaines Street
Tallahassee, FL 32399-4229
*Counsel for Department of Financial Services, Division of Workers' Compensation*

Matthew J. Lavisky, Esq.
Butler Weihmuller, Katz Craig LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
*Counsel for Liberty Insurance Corporation and Employers Insurance Company of Wasau*

Timothy Jesaitis, Esq.
The Law Office of Tim Jesaitis, P.A.
P.O. Box 388
St. Petersburg, FL 33731-0388
*Counsel for Bridgefield Employers Insurance Company and Retail First Insurance Company*

Brian C. Dowling, Esq.
The Worker's Compensation Trial Group, P.A.
100 Terra Mango Loop, Suite A
Orlando, FL 32835
*Counsel for XL Insurance America*

Kenneth Zielinski
Sentrix Pharmacy & Discount, LLC
15688 80th Drive North
Palm Beach Gardens, FL 33418
*Petitioner*

Camille Iurillo, Esq.
Iurillo Law Group, P.A.
5628 Central Avenue
St. Petersburg, FL 33707

Jordan Rappaport, Esq.
Rappaport, Osborne & Rappaport, PLLC
1300 North Federal Hwy, Suite 203
Boca Raton, FL 33432
*Counsel for Sentrix Pharmacy & Discount, LLC*

James N. McConnaughhay, Esq.
McConnaughhay, Connrod, Pope, et al.
1709 Hermitage Blvd., Suite 200
Tallahassee, FL 32308-2706
*Counsel for Wal-Mart Stores, Inc and Publix Super Markets, Inc.*

Nicole Florentino, Esq.
Tara Said, Esq.
Eraclides, Gelman, Hall, Indek, Goodman, Waters & Traverso
1661 Sandspur Road
Maitland, FL 32751
*Counsel for Broadspire Services and New Hampshire Insurance Company, Inc.*

James T. Armstrong, Esq.
Jose Pagan, Esq.
Walton Lantaff Schroeder & Carson, LLP
7680 Universal Blvd, Suite 260
Orlando, FL 32819-8961
2074 Centre Pointe Blvd., Suite 100
Tallahassee, FL 32308
*Counsel for Associated Industries Insurance Company*

Kip O. Lassner, Esq.
Cole Scott & Kissane P.A.
600 N. Pine Island Road, Suite 500
Plantation, FL 33324-1311
*Counsel for Florida Citrus Business and Industries Fund and USIS*

(SIGNATURE BLOCK FOLLOWS)

Kelley Kronenberg, P.A.
Attorneys for Illinois National Ins. Co.
201 South Monroe Street, 5th Floor
Tallahassee, FL  32301
(850) 577-1301 Telephone
kfernandes@kelleykronenberg.com

By: _____
       KIMBERLY J. FERNANDES, ESQ.
       FL Bar No.  0094536

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

SENTRIX PHARMACY AND
DISCOUNT, LLC and
KENNETH ZIELINSKI,

    Petitioners,

vs.

DEPARTMENT OF FINANCIAL
SERVICES, DIVISION OF
WORKERS' COMPENSATION,

    Respondent.

_____/

Case Nos: 16-7158 through
16-7176, 16-7178 through
16-7183, 16-7199 through
16-7201, 16-7232 through
16-7247, and 16-7341

**STATEMENT REGARDING MOTIONS FOR ATTORNEY FEES**

Liberty Insurance Corporation and Employers Insurance Company of Wausau ("Liberty") file this statement regarding their motions for attorney fees. This statement is provided in response to this Court's Order of May 11, 2018.

Liberty has filed the following papers regarding motions for attorney fees:

- Motion for Sanctions (Case Number 16-7200) – April 18, 2017;

- Motion for Sanctions (Case Number 16-7199) – dated April 25, 2017;

- Motion for Sanctions (Case Number 16-7175) – dated May 1, 2017;

- Reply to Petitioners' Response in Opposition to Motions for Sanctions – dated July 3, 2017.

Liberty also requested attorney fees and costs in the following motions:

- Motion for Summary Final Order (Case Number 16-7200) – dated April 19, 2017;

- Motion for Summary Final Order (Case Number 16-7199) – dated May 22, 2017;

- Motion for Summary Final Order (Case Number 16-7175) – dated June 12, 2017.

Liberty has moved for attorney fees and costs against Sentrix Pharmacy and Discount, LLC., Kenneth Zielinski and their lawyers in the motions set above.  Liberty identifies these motions in compliance with this Court's May 11, 2018 Order.

Liberty recently entered into a settlement with Sentrix.[1]  Upon Sentrix's performance of a condition of the settlement, Liberty will withdraw these pending motions for attorney fees and costs as to all parties.  Liberty requests that this Court not rule on these motions at this time.  Liberty anticipates withdrawing these motions upon Sentrix's performance of the condition of the settlement.

BUTLER WEIHMULLER KATZ CRAIG LLP

/s/ Matthew J. Lavisky
MATTHEW J. LAVISKY, ESQ.
Florida Bar No.: 48109
Email: mlavisky@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
Counsel for Liberty Insurance Corporation and
Employers Insurance Company of Wausau

---

[1] Order approving settlement attached.

2

## CERTIFICATE OF SERVICE

I certify that on June 11, 2018, a true and correct copy of the foregoing has been furnished upon the parties via e-mail and electronically served through the Clerk of the Division of Administrative Hearings:

Thomas Nemecek, Esq.
Department of Financial Services
Office of the General Counsel
200 E. Gaines Street
Tallahassee, FL 32399-4229
Counsel for Department of Financial Services, Division of Workers' Compensation

Tabitha G. Harnage, Esq.
Department of Financial Services
200 E. Gaines Street
Tallahassee, FL 32399-4229
Counsel for Department of Financial Services, Division of Workers' Compensation

Timothy Jesaitis, Esq.
The Law Office of Tim Jesaitis, P.A.
P.O. Box 388
St. Petersburg, FL 33731-0388
Counsel for Bridgefield Employers Insurance Company
and Retail First Insurance Company

James N. McConnaughhay
McConnaughhay, Coonrod, Pope, Weaver & Stem
1709 Hermitage Blvd., Suite 200
Tallahassee, FL 32308-2706
Counsel for Publix Super Markets, Inc.

Nicole Florentino, Esq.
Tara Said, Esq.
Eraclides, Gelman, Hall, Indek, Goodman, Waters & Traverso
1661 Sandspur Road
Maitland, FL 32751
Counsel for Broadspire Services and New Hampshire Insurance Company, Inc.

3

James T. Armstrong, Esq.
Walton Lantaff Schroeder & Carson, LLP
7680 Universal Blvd., Suite 260
Orlando, FL 32819-8961
Counsel for Associated Industries Insurance Company


Kip O. Lassner, Esq.
Cole Scott & Kissane, P.A.
600 N. Pine Island Road, Suite 500
Plantation, FL 33324-1311
Counsel for Florida Citrus Business And Industries Fund and USIS

Kimberly J. Fernandes, Esq.
Kelley Kronenberg, P.A.
201 South Monroe St., 5th Floor
Tallahassee, FL 32301
Counsel for Illinois National Insurance Company

     I certify that on June 11, 2018, a true and correct copy of the foregoing has been sent by U.S. Mail to Petitioner Kenneth Zielinski at:

Kenneth Zielinski
15688 80th Drive North,
Palm Beach Gardens, Florida 33418


            /s/ Matthew J. Lavisky
            MATTHEW J. LAVISKY, ESQ.

4



**ORDERED in the Southern District of Florida on June 11, 2018.**

Raymond B. Ray, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

CASE NO. 17-19073-RBR
CHAPTER 11

SENTRIX PHARMACY AND DISCOUNT, LLC,

    Debtor.

_____/

### ORDER GRANTING MOTION TO APPROVE SETTLEMENT AGREEMENT AND GLOBAL MUTUAL RELEASE OF ALL CLAIMS WITH LIBERTY INSURANCE CORPORATION AND EMPLOYEES INSURANCE COMPANY OF WAUSAU (ECF 299)

THIS CAUSE came on to be heard June 5, 2018, in Fort Lauderdale upon the Debtor's Motion to Approve Settlement Agreement with Liberty Insurance Corporation and Employees Insurance Company of Wausau (ECF 299), and the Court having heard argument of counsel, and for the reasons stated on the record and being otherwise duly advised, it is

ORDERED AND ADJUDGED:

1.      The Motion to Approve Settlement Agreement with Liberty Insurance Corporation and Employees Insurance Company of Wausau (ECF 299), is hereby granted and the parties are directed to comply therewith.

3.      The Court shall retain jurisdiction to enforce the terms of this Settlement.

### 

Submitted By:
Jordan L. Rappaport, Esquire
Florida Bar No. 108022
Rappaport Osborne & Rappaport, PLLC
1300 N. Federal Highway, #203
Boca Raton, FL 33432
Telephone:  (561) 368-2200
Facsimile:   (561) 338-0350

Copies Furnished To:

Jordan L. Rappaport, Esq. is directed to mail or electronically serve where available a conformed copy of this Order to all interested parties and creditors.

Exhibit "E"

FILED

August 29, 2017

2017 SEP -5 PM 2: 47

Sent Via Certified Mail
Robert E Meale
Administrative Law Judge
Division of Administrative Hearings
The De Soto Building
1230 Apalachee Parkway
Tallahassee FL, 32399

DIVISION OF
ADMINISTRATIVE HEARINGS

RE: DOAH Case 16-7158

Sentrix Pharmacy and Discount, LLC vs. Division of Workers Compensation

Honorable Judge Meale,

I would like to introduce myself, I am Kenneth Zielinski. I am the Pharmacist in Charge of Sentrix Pharmacy and Discount. I have been employed as the Pharmacist in Charge for Sentrix Pharmacy since February 1st, 2016. I was asked to sign Worker's compensation petition forms by my supervisors as a provider, based on the recommendation of the Department of Worker's Compensation of Florida.

These petitions were for payment disputes for the pharmacy I am employed by and I signed them as a representative of Sentrix. I am a salaried employee for Sentrix. I do not receive profit sharing, stock options or any type of bonus for doing so. I sign the these petitions as advised again, based on the recommendation of the Florida Department of Workers Compensation.

I do not intend, now or in the future, to pursue any reimbursement for myself as an individual. Please accept this letter, in what legal manner required, as my sworn statement to that fact.

Thank you Kindly,

*Kenneth G. Zielinski*

Kenneth Zielinski

c.c. Honorable Judge Raymond B. Ray
US Court House
299 E. Broward, #308
Ft. Lauderdale, FL 33301

DOAH Fax Filing: (850) 921-6847